TOMBLIN v. CALLEN ET AL. AND NELSON, INTERVENOR.

1. **Contract**: SALE OF GRAIN: FUTURE DELIVERY: PAYMENT OF DIFFER-ENCES: VALIDITY. Contracts for the future delivery of grain, where a delivery in fact is contemplated, are legitimate, even though the parties may at the same time contemplate the possibility of a settlement by a payment of the differences between the contract price and the market price without the delivery of the grain; and the evidence in this case (see opinion) *held* not to establish that the contract in question was other than this.

2. **Pledge**: COLLATERAL SECURITY: AUTHORITY OF PLEDGOR. Where plaintiff, who was the payee and holder of the note and mortgage in suit, indorsed them in blank and delivered them to her son to raise money upon, for use in his business, and he pledged them to secure an antecedent debt of his, *held* that, if there was any deviation from the understanding between him and his mother, it was an immaterial one, and did not affect the rights of one who came to be an innocent holder for value of the securities.

*Appeal from Mills Circuit Court.*

FRIDAY, JUNE 18.

ACTION in equity upon a promissory note and mortgage executed by the defendant Callen. He answered, admitting the execution, but averring that he had been notified that Murray Nelson claimed to be the owner of the note and mortgage, and had possession of the same. Murray Nelson intervened, setting up his possession and ownership, and asking for a decree of foreclosure. The case came on for trial, as between the plaintiff and the intervenor, and decree was rendered for the plaintiff. The intervenor appeals.

*Smith McPherson* and *Hepburn & Thummel*, for appellant.

*John Y. Stone*, for appellee.

ADAMS, CH. J.—The note and mortgage in question were

executed to the plaintiff, Mary C. Tomblin.   Afterwards the plaintiff, at the request of her son, D. M. Tomb-

1. CONTRACT: sale of grain: future delivery: payment of differences: validity.

lin, indorsed the same in blank, and delivered them to him to enable him to pledge the same as collateral security in his business transactions. Tomblin delivered them as collateral security for a promissory note executed by him to the defendants E. B. Stephens & Co., and the latter sold and transferred the note and mortgage so pledged to the intervenor, Murray Nelson, who still holds the same.   The plaintiff's contention, however, is that the transaction between her son and E. B. Stephens & Co. never had any validity; that the latter, accordingly, never acquired any interest in the note and mortgage; and that, having no interest, they could not transfer any to the intervenor.

The fact appears to be that E. B. Stephens & Co. were, at the time of the transaction in question, commission merchants, doing business in the city of Chicago, and were engaged in making contracts on commission for the purchase and sale of grain.   They had made several such contracts for D. M. Tomblin, and most of them had been settled and closed out without the actual delivery of any grain, and by a payment of *differences*, so called; that is, by a payment by the losing party of enough to put the other party in as good condition as he would have been in if there had been a delivery.   It seems also that E. B. Stephens & Co. became responsible for the carrying out of these contracts, and had a right to look to the buyer or seller, as the case might be, for indemnity.   In October, 1878, the transactions between Tomblin and E. B. Stephens & Co. had been such that it was understood between them that Tomblin was indebted to them in the sum of $1,712.94.   Tomblin gave them his note for that amount, and pledged the Callen note and mortgage in question as collateral.

The plaintiff claims that the transactions out of which Tomblin's pretended indebtedness arose were gambling transactions, in that they were not, as they purported to be upon

their face, contracts for the sale and delivery of grain, but, virtually, bets in relation to the future market price of grain in Chicago. It is a matter of general information that many ostensible transactions in grain are of a purely gambling and criminal character. The wide-spread ruin produced shows them to be among the greatest of evils. Where their true character is discovered, courts should promptly condemn them, and hold them void. But they need to proceed with caution. In the movement of the grain of the country, contracts for future delivery are, to some extent, a necessity, and they are as legitimate as any other; and that, too, though the parties may contemplate the possibility of a settlement by a payment of differences. The real intention of the parties, of course, must determine the character of the transaction, and in arriving at the intention we must be governed by the evidence, and not by conjectures based upon our knowledge of other contracts.

In *First Nat'l Bank of Lyons v. Oskaloosa Packing Co.*, 66 Iowa, 41, a contract was found to be a gambling contract. It is insisted by the plaintiff that the facts in that case were essentially like the facts in this. But that case differs from this. That case was an action at law, and we could not set aside the verdict of the jury if there was any evidence to sustain it, and we thought there was. Besides, the evidence in that case differed materially from the evidence in this. In that case no one of the commission merchants was put upon the stand. In this case E. B. Stephens testified in these words: "There is a class of trade, not recognized by the board of trade, known as 'puts and calls.' None of our trades for Mr. Tomblin were of this class, but intended for an actual delivery of the property bought or sold." The evidence also discloses the name of the other party to the contracts; and that the understanding was that E. B. Stephens & Co. made themselves responsible, with the right to look to Tomblin for indemnity.

It is to be observed, too, that, while Tomblin testifies to the

effect that there was no understanding that grain was to be delivered, he does not testify to a word as having passed between him and E. B. Stephens & Co. tending to show that E. B. Stephens & Co.'s understanding was that grain was not to be delivered if called for, or that the transaction was different in any respect from what it purported to be upon its face. It seems to us that, weighing the evidence in this case as we weigh evidence in other cases, it is impossible to say that there is a preponderance in favor of the plaintiff who sets up the illegality of the transaction in question. The case is not substantially unlike *Murry v. Osheltree*, 59 Iowa, 435.

The plaintiff, however, insists that the evidence shows that Tomblin was intrusted with the note and mortgage only for the purpose of raising money upon them; that in pledging them for an antecedent debt he exceeded his power; and that, by reason of such fact, the intervenor acquired no interest in them.

2. PLEDGE: collateral security: authority of pledgor.

The evidence upon the point is the testimony of Tomblin, which is in these words:   "My mother put her signature on the back of the mortgage and note because I asked her to. I told her I wanted to get some money.   She did it to enable me to use it."   The essential fact, so far as the plaintiff is concerned, is that she delivered the note and mortgage to her son, to be used by him in pledging the same as collateral security.   No question could have been raised if he had borrowed money upon them to pay the debt in question.   But, so far as we can see, it was a matter of indifference to the plaintiff whether her son did that, or left the debt unpaid, and pledged the note and mortgage to secure it.   We think, then, that if there was any deviation by Tomblin from the understanding between him and his mother, it was not a material one, and did not affect the rights of E. B. Stephens & Co., nor that of the intervenor.

In our opinion, the plaintiff's claim should have been denied, and a decree entered in favor of the intervenor, as prayed in his petition.                              REVERSED.