## HIGHTOWER *v.* ANSLEY.

1. A contract for the sale of stock in an incorporated company, at the price of fifty dollars or more, is within the Civil Code, §2693, par. 7, which requires contracts for the sale of goods, wares, and merchandise, to the amount of fifty dollars or more, to be in writing.

2. If the holder of the stock agrees to sell the same at a stipulated price, on condition that the purchaser shall give up a lucrative position and enter into the service of the corporation at a fixed salary, and the latter complies with this condition, the contract will be taken out of the statute of frauds by such performance on his part.

3. Evidence tending to show a subsequent recognition of the contract by the holder of the stock, including a written calculation made by him as to the amount due by the purchaser under a contract of like effect made with another stockholder, is admissible to show upon what terms the parties understood the stock was to be sold.

4. Proof of the consideration moving to the holder of the stock which induced him to agree to sell it at the stipulated price is admissible, though the evidence on this point should properly be so restricted as to eliminate all unnecessary details.

5. On the trial of a suit for damages because of an alleged breach of the contract, the plaintiff insisting and the defendant denying that demand had been made for a delivery of the stock, it is error to admit in evidence a letter written by the plaintiff to the defendant which does not establish the alleged demand, but simply discloses a self-serving declaration on the part of the plaintiff that such demand had previously been made and the defendant had refused to comply therewith.

6. Where the court, in charging the jury as to the respective contentions of the parties, not only failed to correctly present those of the losing party, but practically instructed the jury that he admitted the contention of the opposite party concerning one of the vital issues in the case, a new trial is demanded.

Submitted March 3,—Decided July 27, 1906.

Complaint. Before Judge Mitchell. Thomas superior court. July 13, 1905.

*N. E. & W. A. Harris, J. H. Merrill,* and *Fondren Mitchell,* for plaintiff in error.

*Shipp & Kline, S. A. Roddenbery,* and *Roscoe Luke,* contra.

EVANS, J. This was an action to recover damages for the refusal of the defendant to deliver stock of an incorporated company in accordance with the contract of purchase. The case was before this court on demurrer (120 *Ga.* 719), where a summary of the allegations of the petition will appear. The defendant in his plea denied the execution of the contract alleged; and affirmatively pleaded that even if the contract was made as alleged, the same was not in writing nor had there been part performance thereof. A verdict was rendered for the plaintiff, and a motion for a new trial was made, which being overruled, the points therein made are now under review.

1. In determining the respective rights of the parties, it becomes necessary first to decide whether a contract for the sale of shares in an incorporated company subsequently to be issued, or an option for the purchase of shares in an incorporated company, is within the provisions of the Civil Code, §2693, par. 7. That section requires that a contract for the sale of goods, wares, and merchandise, in existence or not in esse, to the amount of fifty dollars or more, except the buyer shall accept part of the goods sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment, shall be in writing in order to be valid. The early English decisions were conflicting as to whether a sale of stock in an incorporated company was within the statute of frauds, and the rule was not definitely settled in that jurisdiction until about the year 1839, when the rule was adopted that stock in a corporation was neither goods, wares, nor merchandise, as those terms are used in the statute of frauds. Since that time, corporate stock has been held by the English courts to be not within the statute. 1 Cook on Stock and Stockholders, §339. In the United States it has been very generally held that corporate stock is a species of intangible personal property and is within the statute. 20 Cyc. 244; 3 Clark & Mar. Priv. Corp. §610. The first expression of this court as to the comprehensiveness of the terms "goods, wares, and merchandise," is found in the case of

*Walker* v. *Supple,* 54 *Ga.* 178. In that case it was held that a contract to purchase an account for fifty dollars or more is within the reason and spirit of the statute of frauds, and must be in writing. An account is but a chose in action, a form of intangible property; and if the reason and spirit of our statute should be construed to include accounts, as goods or merchandise, a fortiori corporate stock, which by statute is the subject-matter of levy and sale, should likewise be included within the statute. The case of *Walker* v. *Supple* was decided in 1875, and the construction put upon the statute was acquiesced in for more than twenty years. Its principle seems to have been disregarded in the later case of *Rogers* v. *Burr,* 105 *Ga.* 432, decided by five Justices, and it is noteworthy of remark that the previous case was not referred to by the learned judge in his opinion in the later case. In the case in 105 *Ga.* it was held that a contract to purchase shares of the capital stock of a manufacturing company was not within the statute of frauds, because the subject of the purchase was neither goods, wares, nor merchandise, as contemplated by the statute. The principles decided in these two cases are directly in conflict, and the cases can not be harmonized. According to our well-settled rule, the binding force of the older case must control. Besides, it is more in accord with the spirit of the law that personal property which is capable of assignment or transfer should not be distinguished from goods, wares, and merchandise, as taken in their literal sense. If the terms "goods, wares, and merchandise," are given their most limited significance, it would exclude, without reason, from the operation of the statute a large class of personal property.

2. The plaintiff contends that although the original contract was not in writing, the defendant subsequently in a letter admitted its existence. The material part of this letter, which was written by the defendant to the plaintiff on September 10, 1901, is as follows: "Some time in May last, or a few days after you left our service, I had a short talk with Mr. Heath about the stock we agreed to sell you when we entered this enterprise here. I told Mr. Heath to say to you that if you wanted that stock, you could have it at the original cost. This was in accordance and in compliance with our agreement to let you have it. Mr. Heath told me yesterday that he had not mentioned this to you, and I write this letter to tell you that if you desire it you can have ten thousand of the stock on the

ground-floor basis; you know what that is." This letter does not specify the shares of stock of any particular corporation, or the original cost, or when ·payment was to be made. These vital particulars of the contract asserted by the plaintiff would have to be supplied by parol. Whenever the writing of itself does not contain a complete contract and it is necessary to supply omissions by parol, it is insufficient to take the case without the statute. *North v. Mendel, 73 Ga. 400.*

The plaintiff further contends that the contract has been taken out of the statute, because of part performance of the contract. It is his contention that the firm of Heath & Hightower promised him that if he would negotiate for the purchase of timber for a sawmill location, they would give him an equitable interest in the partnership; that Heath & Hightower purchased the timber as the result of his negotiations, and afterwards promised that if he would go into the service of a corporation, into which the partnership was to be merged, at and for the sum of $150 per month, they would each sell him fifty shares of the capital stock of the corporation for the sum of $2400, on credit; that he entered into the service of the corporation and remained with it for a period of two years, when he severed his connection with the assent of the defendant, who subsequently agreed that he would charge him eight per cent. interest on the purchase-price of the stock up to that time, and would let the debt owing him by plaintiff run for the next twelve months at six per cent. By rendering the service to the corporation according to the terms and stipulations of his agreement with the defendant, the plaintiff had so far performed his obligations under the contract.as would take the case out of the statute. But it is contended that the plaintiff, by voluntarily leaving the service of the company, had failed to live up to the terms of his contract, and for that reason there was no such part performance on his part of his undertakings as would compel a specific performance of a delivery of the shares. The letter of September 10, 1901, quoted above, amounted to a waiver on the part of the defendant to insist that the plaintiff should remain longer in the service of the company as a condition precedent to his right to demand delivery of the stock upon offer of payment.

3. The plaintiff further contended that Hightower obligated to sell fifty shares of stock in the company upon the same terms and

under the same conditions that Heath had obligated to sell fifty shares to the plaintiff; that, with the consent of the plaintiff, Heath sold his shares of stock, including the fifty shares he had obligated to sell to the plaintiff, and paid plaintiff the difference between the selling price and the price at which plaintiff was to pay for his fifty shares; that Hightower made the calculation by which it was ascertained what amount was due the plaintiff under this arrangement, which amount was paid to plaintiff, and that in this settlement Hightower admitted his obligation to the plaintiff to be of the same character as that of Heath to the plaintiff. On the trial, the figures made by the defendant in the settlement between Heath and the plaintiff were allowed in evidence over the objection of the defendant. These figures, in connection with the testimony of what occurred at the time they were made by the defendant, were admissible in evidence as being in the nature of an admission of the terms of the contract as contended for by the plaintiff.

4. It is also contended by the defendant that the court erred in allowing the plaintiff to testify to a conversation between himself and Heath as to the latter's employment of the plaintiff to negotiate for a sawmill location, and also a conversation between plaintiff and one Ashburn, the person from whom the timber was purchased. This evidence was objected to on the ground of irrelevancy, and because negotiations between Heath and a third party and between plaintiff and Ashburn were not binding on the defendant, unless previously authorized or ratified by him. There was evidence submitted in the case, tending to show that Hightower was informed of the arrangement between Heath and the plaintiff, and assented thereto, and that he was cognizant of the plaintiff's negotiations with Ashburn for the purchase of the timber. While, perhaps, it may have been improper to go into the minute details as to the terms of purchase in the conversation between plaintiff and Ashburn, the testimony was relevant as giving a history of the case leading up to the contract upon which the plaintiff relied as a basis for his action.

5. One of the issues made by the defendant's plea was that there had been no demand made for the stock. A letter written by the plaintiff and received by the defendant, in which the plaintiff referred to a previous demand as having been made for the stock and asked if the defendant would reconsider his refusal to comply

therewith, was read in evidence over the defendant's objection that
it was irrelevant and did not bear upon any issue in the case. The
letter itself did not amount to a demand, and, so far as it referred
to a previous demand as having been made by the plaintiff, it
amounted to only a self-serving declaration, and should have been
excluded by the court.

6. In stating the contentions of the parties the court charged the
jury as follows: "The defendant denies that there was any such
contract; he claims that he made a proposition to deliver the stock
to the plaintiff in this case upon the payment of the amount due
for the stock; also that he would allow him 12 months in which
to raise the amount and take the stock. The plaintiff denies that,
or insists rather, that within the twelve months he proposed to raise
the money to pay for the stock he was to receive from the defendant
in the case." This charge is alleged to be erroneous for the reason
that it incorrectly states the contention of the defendant. In his
pleadings the defendant denied that he made the contract alleged
in the plaintiff's petition; in his testimony he denied that he ever
agreed to give the plaintiff twelve months from the time of a con-
versation had with the plaintiff, within which to raise the money.
The defendant testified that in that conversation he said to the
plaintiff that he wanted him to pay for the stock, and asked him to
pay a certain amount which Heath had turned over to him, and to
give notes for the balance; that the plaintiff declined to do this,
whereupon defendant proposed to let him pay eight per cent. in-
terest on the purchase-price, and finally said: "You have paid eight
per cent. up to now, and now this matter can run on until I am
obliged to have the money, at six per cent.; but when I have got to
have the money you must pay it, if you ever expect to get the stock."
Defendant denied that any definite time was fixed for payment, and
stated that he only agreed to carry the stock and wait on the plain-
tiff until such time as he (the defendant) "was obliged to have the
money," and that "there was no agreement to carry it 12 months
at all." The defendant further insisted that originally he gave
the plaintiff an option to buy fifty shares of his stock in the cor-
poration, upon certain terms and conditions; that the plaintiff
never obligated himself to take the stock, and that after the trans-
action had run on in this manner for about two years, this con-
versation was had in which he extended the option to such time

as he was obliged to have the money. It was his contention, and testified to by him, that an emergency arose, about nine months after this conversation, for him to raise a large sum of money, and that he called on the plaintiff to pay for the stock, saying, "The time has come when you will have to pay for that stock, if you expect to keep it;" that the plaintiff said, "John, give me a day or two," and defendant "agreed to give him a day or two," but plaintiff did not offer to make payment till June 28, nine days after demand for payment had been made on him. Defendant's whole contention was that the plaintiff only had an option to buy his stock and was to pay for the same on demand, if defendant should need the money, and as plaintiff did not pay it within the time granted after demand for payment was made, the option expired by its own limitation and defendant was under no duty to deliver the stock to plaintiff upon a subsequent tender of the purchase-money. The summary of the contentions of the defendant given to the jury by the court deprived the defendant of his defense; the court in effect said that the defendant admitted that the plaintiff was to have one year in which to pay for the stock, whereas the defendant strenuously denied that he gave the plaintiff twelve months. This instruction was particularly harmful to the defendant, because, if the jury should believe that the contract had been made as claimed by the plaintiff and that the plaintiff had offered to perform within the twelve months, a verdict in his favor was inevitable; whereas, if the jury should believe the testimony of the defendant that the plaintiff only had an option and that option had expired at the time of his demand for the stock, the defendant would have been justified in refusing to comply with the plaintiff's demand. Of course, we are not passing upon whether, if the jury should find the contention of the defendant to be true, payment should have been made within two days at the farthest, or whether "a day or two" was only used as a colloquial expression and should be held to include a reasonable time, under all the circumstances, in which to comply with the defendant's exaction of the purchase-money. Those questions were not submitted to the court. The defense of the defendant was that all that the plaintiff had was an option, that time was of the essence of that option, that defendant was not seeking to enforce a forfeiture or attempting to rescind a contract already made, but that he was not liable unless the option had been

accepted within the time limited. By misstating his contention the court deprived him of his defense.

With reference to the various assignments of error it may be pertinent to observe that while some of the charges to which exception has been taken may not have been strictly accurate, still as the case is to be tried over again and the principles controlling the relative rights of the parties are herein given, it is not necessary to deal with them specifically, nor is it necessary to deal with other assignments of error as to matters which are not likely to arise at the next trial.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*