## OWENBY *v.* GEORGIA BAPTIST ASSEMBLY.

1. In mutual subscriptions for a given object, the promise of the others is a good consideration for the promise of each.

(a) It is not necessary that the payee should be named in a subscription paper; it is sufficient if there is an acceptance by the party intended.

(b) The test of mutuality of a promise is to be applied, not as of the time it was made, but as of the time when it is to be enforced; therefore a promise in a subscription paper for a given object may be unilateral when made, but if the party intended accomplishes the object as contemplated, then the promise is rendered valid and binding.

(c) The ground of demurrer to the declaration not controlled by the rulings above announced, if error at all, was not hurtful to the defendant.

2. There was no sufficient assignment of error to the ruling of the judge in holding that he was not disqualified to preside in the trial of the case.

3. There was no error in the admission or rejection of evidence.

4. A nonsuit was properly refused, and the verdict directed was demanded under the law and the evidence.

FEBRUARY 16, 1912. REHEARING DENIED FEBRUARY 29, 1912.

Attachment. Before Judge Morris. Fannin superior court. October 21, 1910.

*A. S. J. Hall* and *Gober & Griffin,* for plaintiff in error.

*T. A. Brown, O. R. DuPree, W. Butt,* and *J. Z. Foster,* contra.

FISH, C. J.   The Georgia Baptist Assembly sued out an attachment against Owenby as a non-resident of the State.   A levy was made on certain personalty and realty.   The defendant replevied the personalty, and, upon the filing of a declaration on the attachment against him, appeared and pleaded to the merits.   The substance of the declaration as amended, after portions thereof had been stricken on demurrer, is as follows:   The defendant is indebted to the plaintiff $500 on a subscription paper signed by the defendant and numerous other cosubscribers, a copy of which is: "Blue Ridge, Fannin County, Georgia, March 5, 1908.   We, the undersigned citizens of Blue Ridge and vicinity, promise and agree to give the amounts set opposite our names for the purpose of inducing the Baptists to locate their chautauqua or assembly grounds at Blue Ridge, Georgia."   The amount opposite the defendant's name is $500.   Subsequently to the date of the subscription paper, the subscribers, or nearly all of them, including the defendant (who owned a large amount of real estate in the city of Blue Ridge, where he resided at the time he signed the paper), in order to more successfully accomplish the purposes for which the subscriptions were made, namely, to secure the location of the assembly grounds of the Georgia Baptists in the city of Blue Ridge, had themselves incorporated in this State under the name of the Business Men's League of Blue Ridge, and soon thereafter organized the corporation, the defendant being one of the original incorporators, and not having since severed his connection with the corporation.   Thereafter the plaintiff, having been incorporated as the Georgia Baptist Assembly, and acting upon the inducements offered by the signers of the subscription paper, accepted the offer made therein, and located its assembly grounds in the city of Blue Ridge.   Upon such acceptance, the Business Men's League of Blue Ridge, in pursuance of a written resolution adopted by it, authorizing its president and secretary so to do, transferred in writing all of its interests in and to such subscription list, which transfer was signed by the president and secretary of the league, the corporate seal being thereto attached.   Some of the subscribers have paid their subscriptions in full; others have paid half of the amounts they subscribed; and the money so paid has been invested in certain described lands in

or near the city of Blue Ridge, which have been conveyed to the plaintiff to be used in connection with its assembly grounds; and the plaintiff, relying upon the agreement set forth in the subscription, has expended large sums of money in locating its assembly grounds in the city of Blue Ridge. The amendment to the declaration alleged: "The defendant assented to every act of the Business Men's League of Blue Ridge, and of the plaintiff, looking to the location of said assembly grounds at Blue Ridge, and was a party to it; and he is now estopped from dissenting from such actions taken by said corporations. The plaintiff has acted upon the faith of the said acts of defendant and said Business Men's League of Blue Ridge, and has invested and spent large sums of money in establishing its assembly grounds at Blue Ridge, Georgia." The defendant refused to pay any part of his subscription, and has removed from the State. When the demurrers came on to be heard, the judge held himself disqualified to preside. By consent of counsel for the respective parties the case was "referred" to an attorney of the court as judge pro hac vice; and it was further ordered, by agreement, that the demurrers be heard in vacation, with the right of exception preserved. They were so heard; some of them were overruled, while others were sustained. The defendant filed exceptions pendente lite to the refusal to sustain all of the demurrers. When the case subsequently came on for trial during term, the presiding judge held himself not to be disqualified to try the case, and entered an order revoking the former order in which he had held himself disqualified. To this the defendant objected, contending that the judge was disqualified to preside. Upon the trial the defendant, at the conclusion of the evidence for the plaintiff, moved for a nonsuit, which was denied. Finally a verdict was directed by the court in favor of the plaintiff against the defendant for the amount of his subscription with interest thereon at 7 per cent. from the date of the subscription paper. The defendant filed a direct bill of exceptions, assigning error upon his exceptions pendente lite; upon the ruling of the judge holding himself not disqualified to try the case; upon the admission and rejection of certain evidence; upon the overruling of the motion for nonsuit; and upon the direction of the verdict.

1. The grounds of demurrer to the declaration are, in effect, as follows: (*a*) no consideration is expressed in the subscription pa-

per; (*b*) no payee is named therein; (*c*) the agreement it contains is unilateral; (*d*) there is no promise in it to the Business Men's League of Blue Ridge, nor is it alleged that the league had any connection with or interest in such paper, so as to give it the right to transfer the same, or that the defendant ever agreed that it be transferred by the league to the plaintiff. In our opinion there is no merit in any of these grounds of demurrer.

(*a*) "In mutual subscriptions for a given object, the promise of the others is a good consideration for the promise of each." Civil Code, § 4246. "If there be a valid consideration for the promise, it matters not from whom it is moved; the promisee may sustain his action, though a stranger to the consideration." Ib. § 4249.

(*b*) It is not necessary that the payee should be named in the subscription paper; it is sufficient if there is an acceptance by the party intended. 37 Cyc. 483; 27 Am. & Eng. Enc. Law, 276; 1 Page on Contracts, § 51. See cases sustaining the text cited in each of these authorities. In *Wilson* v. *First Pres. Church,* 56 *Ga.* 554, it was held: "A subscription signed by defendant and others in these words: ' We, the undersigned, promise to pay the amount set opposite to our several names, to be applied to the completion of the house of worship of the First Presbyterian Church in Savannah,' . . is a promise to pay the church, it being a corporation, and is valid, being supported by the consideration of mutual promises, and by the fact that the church, on the faith of the subscription, entered upon the work of completing the building."

(*c*) While the promise contained in the subscription paper may have been unilateral at the time it was signed by the defendant, the test of mutuality is to be applied, not as of that time, but as of the time when the agreement is to be enforced; and if the defendant signed the subscription paper for the purpose of inducing the Baptists to locate their assembly grounds in the city of Blue Ridge, and the plaintiff, for whose benefit it was substantially alleged the subscription was made, relying upon the agreement in the subscription, located its assembly grounds at Blue Ridge and in doing so expended large amounts of money, then the plaintiff did exactly what it was expected to do, thereby furnishing the contemplated consideration and changing what was at first a unilateral promise into a valid and binding contract. *Wilson* v. *First Presbyterian*

*Church,* 56 *Ga.* 554 (2) ; *Brown* v. *Bowman,* 119 *Ga.* 153 (46 S. E. 410) ; *Hardin* v. *Case,* 134 *Ga.* 813 (68 S. E. 648).

(*d*) The specifically expressed purpose of the subscription paper was to induce the Baptists to locate their assembly grounds at Blue Ridge, where it is alleged the defendant resided when he signed the paper, and where he then owned considerable real estate. It is further alleged that the defendant and nearly all of the other subscribers, in order to more successfully accomplish the purpose for which the subscriptions were made, that is, to secure the location of the assembly grounds of the Georgia Baptists at Blue Ridge, had themselves incorporated under the name of the Business Men's League of Blue Ridge; that the defendant has ever since remained a member of such league; that the corporation adopted a resolution authorizing and directing its president and secretary to transfer the subscription paper to the plaintiff, which was accordingly done; and that the plaintiff, relying upon the inducement offered by the signers of the subscription paper, accepted the same, located its assembly grounds at Blue Ridge, and expended large sums of money in so doing. The declaration, as amended, also alleges that the defendant assented to every act of the league and of the plaintiff looking to the location of the plaintiff's assembly grounds at Blue Ridge; and that the plaintiff, in locating such grounds there and in expending large sums of money in so doing, acted upon the faith of the acts of the defendant and the league. Even if, under all the allegations of the declaration, it does not appear that the league had such an interest in the subscription paper as authorized it to transfer the same to the plaintiff, we are nevertheless of the opinion that the declaration set out a cause of action in favor of the plaintiff against the defendant; as it sufficiently appears therefrom that the defendant signed the subscription paper for the purpose of securing the location of the assembly grounds of the Baptists at his home city, where he owned valuable real estate; that acting upon the promise contained in such paper, and induced thereby, the plaintiff established the assembly grounds of the Georgia Baptist Assembly at Blue Ridge, and expended large sums of money in so doing; that some of the subscribers have paid in full, and others have paid half of their subscriptions; and that the defendant, although he has presumably received his proportion of whatever benefits might be derived from the location of the assembly grounds in

the city of his residence, has refused to pay what he and the other subscribers offered or promised in order to secure that which they desired, and which they have obtained from the plaintiff. *Wilson* v. *First Presbyterian Church*, 56 *Ga.* 564; 37 Cyc. 484; 27 Am. & Eng. Enc. Law, 380; 1 Page on Contracts, §§ 51, 298.

2. Error is assigned upon the ruling of the trial judge in holding himself not disqualified to preside in the case. It is recited in the bill of exceptions that at the May term, 1910, of the court where the case was pending, the presiding judge passed an order in which it is stated, that, "it appearing" that he "is disqualified to hear and determine" the case, it is, by consent of parties, "referred" to a named attorney of the court as judge pro hac vice, and that the demurrers to the declaration be heard by him in vacation. Another recital of the bill of exceptions is that at the subsequent term of the court, during which the case was tried, the presiding judge, "over the objection of counsel for defendant, . . took jurisdiction of said case and held himself qualified to try, and ordered said case to trial before a jury." The only other reference to the alleged disqualification of the judge in the bill of exceptions is the following: "The contract or acceptance dated January 5th, 1909, between the plaintiffs and the Business Men's League of Blue Ridge, shows that upon certain contingencies, or a failure of the plaintiffs to do certain things within a certain time, the property conveyed was to revert to the Business Men's League or the subscribers. This being true, it was error on the part of the court to take jurisdiction of said case after having disqualified, and after no notice was served to vacate the order of the court disqualifying and referring the case to a judge pro hac vice, when it appeared that said court, under the terms of the agreement, was interested in this suit. Defendant assigns error upon the court's taking jurisdiction over objection, and says that the court was disqualified to hear and determine said case, and the taking of jurisdiction and the hearing of said case over his objection without notice was error and is contrary to law." As will be observed, it does not appear from the above recitals in the bill of exceptions upon what ground the judge held himself to be disqualified, nor why he subsequently held himself to be qualified, nor does it appear what the objection was (if any specific objection was made) which the defendant urged before the judge as a ground for his disqualifica-

tion at the time he held himself to be qualified, although the plaintiff in error undertakes in the bill of exceptions to set forth the reasons why the court erred in holding himself qualified. Even if such reasons are apparently sound, the assignment of error is not sufficient; because we are not informed anywhere in the bill of exceptions that the judge passed on them, or what facts he did pass on in deciding that he was qualified to preside in the case. The principle applies here of the familiar rule that an assignment of error upon the admission of evidence over objection is not sufficient where the objection urged to the evidence at the time it was admitted is not disclosed.

3. We have carefully examined and considered every assignment of error upon the admission and rejection of evidence, and are confident that no error was committed in these respects. Indeed it might be said that, in our opinion, if all the evidence which was admitted over the objections of the defendant had been rejected, and if all the evidence offered by him, and which was rejected, had been admitted, the plaintiff nevertheless would have been entitled to recover.

4. A nonsuit was properly refused; and applying the legal principles to which we have referred, in ruling upon the demurrers, to the facts of the case as disclosed by the evidence, the verdict for the plaintiff was demanded, and the court did not err in directing it.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*