## YOUNG MEN'S CHRISTIAN ASSOCIATION *v.* ESTILL *et al.*

1. An oral promise to a charitable corporation to give a specific sum of money for the construction of a building, to be devoted to carrying out the design of such corporation, as soon as the work begins, is not a subscription to shares of stock of a commercial corporation, and is not within the clause of the statute of frauds which requires contracts for the sale of goods, wares, and merchandise to the amount of fifty dollars or more to be in writing.

2. Where the time when the contract is to be performed depends on some contingency, it is within the statute of frauds, provided the contingency can not happen within the year; but if it may happen, it is not within the statute.

3. As a general rule a promise to donate money to a charitable purpose is gratuitous and unenforceable unless some consideration therefor exists. But a consideration of a promise to donate money to a charitable corporation is supplied where the corporation, during the life of the promisor, and before a withdrawal of the promise, and in reliance on his promise, as well as that of others, expends money and incurs enforceable liabilities in furtherance of the enterprise the donors intended to promote. The original gratuitous promise will thus be converted into a valid and enforceable contract.

(*a*) Civil Code § 4246 considered in connection with foregoing ruling as being limited to cases of mutual written subscriptions.

4. The publication in a newspaper, owned and controlled by a corporation, of which the promisor was president and principal stockholder, and with his knowledge, and without repudiation by him, of a list of subscriptions to a charitable corporation, embracing his own, is relevant as tending to show an admission of the promisor to donate the particular sum to the charitable enterprise.

JULY 18, 1913.

Complaint. Before Judge Charlton. Chatham superior court. April 10, 1912.

The Young Men's Christian Association, a corporation, brought suit against the executors of J. H. Estill, to recover an amount alleged to be due on a verbal contract to give $500 for the construction of a building to be devoted to the general purposes of the plaintiff corporation. It was alleged that the directors of the plaintiff corporation determined to erect in the city of Savannah a large building for the benefit of the young men of the city and country, and for the advancement of the cause represented by the plaintiff, which is entirely charitable and benevolent; the plaintiff having no capital stock and not being organized for corporate benefit or gain, but solely for the advancement of the purposes of the Young Men's Christian Association. On April 21, 1905, W. B. Stubbs and J. B. Reid, representing the plaintiff, solicited from Mr. Estill a subscription for the construction of the building. Mr. Estill agreed to subscribe and did subscribe $500, and the following memorandum was made on a card at the time: "Will give $500 as soon as work begins." This memorandum was not signed by Mr. Estill, and the subscription was verbal. Subscriptions were made by others for the same purpose, prior and subsequent to the promise of Mr. Estill, all of which were mutual subscriptions for

the common object; and because of the subscriptions made by Mr. Estill and others the work was undertaken by the plaintiff. The contract was given out and the work completed at a very large expense; and if the subscriptions had not been made by Mr. Estill and others, the work would not have been undertaken by the plaintiff. Subsequently, on March 15, 1906, in an issue of that date of the Savannah Morning News, a public gazette, then and now published in the city of Savannah, and owned by a company of which Mr. Estill was the president and the chief, if not the sole, stockholder, and the management of which was controlled by him, a local item was published, calling attention to the merits of the improvement contemplated, and giving a list of the subscriptions up to that date, there being a large number published, including among them the subscription of Mr. Estill for $500. Although Mr. Estill was cognizant of the fact that his subscription had been taken by the plaintiff, and this fact had been published to the world by his newspaper, he never repudiated or disavowed the same. The contract for the erection of the building was let on April 24, 1907, and work was begun on June 3, 1907, and on the last-mentioned day the subscription became due and payable. On November 9, 1907, Mr. Estill died, and on November 12, 1907, his will was duly probated and letters testamentary issued to his executors. The executors refuse to pay the subscription of Mr. Estill to the plaintiff, and judgment is prayed for the sum of $500, the amount of the subscription, with interest thereon from June 3, 1907. The court sustained a demurrer to the petition and dismissed it.

*Adams & Adams,* for plaintiff.

*Osborne & Lawrence,* for defendants.

EVANS, P. J. (After stating the foregoing facts.)

1. A promise to donate money to a charitable corporation in furtherance of the design of its creation stands upon a different footing from a subscription to shares in a commercial corporation, in their relation to that clause of the statute of frauds which requires contracts for the sale of goods, wares, and merchandise to the amount of fifty dollars or more to be in writing. In *Hightower* v. *Ansley,* 126 *Ga.* 8 (54 S. E. 939, 7 Ann. Cas. 927), it was held that a contract for the sale of shares of stock in an incorporated company, of the value of fifty dollars or more, fell within this clause of the statute. Should this holding be applied to a subscription

for shares, treating the corporation as selling shares to the subscriber, there would be no analogy to a promise to donate money to a charitable institution. A promise to buy shares in a commercial corporation is quite dissimilar from a promise to donate money to an eleemosynary institution. A promise of the latter kind does not fall within this clause of the statute.

2. The promise alleged was one to give $500 to the charitable corporation upon the beginning of the contemplated work of constructing a building in furtherance of the general corporate design. This contingency could occur within a year; and the rule is settled in this State that where the time when a contract is to be performed depends on some contingency, it is within the statute of frauds requiring contracts not to be performed within a year to be in writing, if the contingency can not happen within a year. But if it may happen within a year, it is not within the statute. *Burney v. Ball,* 24 *Ga.* 505.

3. The Young Men's Christian Association is a charitable corporation, and its directors determined to erect in the city of Savannah a large building for the advancement of the cause represented by it, which was entirely charitable and benevolent. Several persons subscribed in writing, promising to give named sums of money for the accomplishment of the enterprise. When Mr. Estill was solicited for a subscription, he promised to give $500 for the work as soon as the work of constructing the building began. The local newspaper owned and published by a company of which he was the chief, if not the only, stockholder, and managed by him, published a list of the subscribers, which included his name among the rest as subscribing the amount which he had orally promised to give. The building was completed at great expense, in reliance upon the subscriptions and promises of Mr. Estill and others. Work began upon the building more than six months before the death of Mr. Estill, and has been fully completed. Mr. Estill never withdrew or repudiated his promise to pay the amount he promised to donate. His executors deny the binding force of his promise to donate $500 to the enterprise. The contention is that a promise to donate a named sum to a charitable purpose is purely gratuitous and unenforceable, for want of a consideration. If Mr. Estill had signed a subscription contract with others to erect this building, the mutual promises of the subscribers would have fur-

nished a good consideration. Our code declares that "in mutual subscriptions for a common object, the promise of the others is a good consideration for the promise of each." Civil Code, § 4246. This section has been held applicable to subscriptions to build churches, and to locate assembly grounds of a religious denomination at a particular point. *Wilson* v. *First Prsbyterian Church,* 56 *Ga.* 554; *Qwenby* v. *Georgia Baptist Assembly,* 137 *Ga.* 698 (74 S. E. 56, 27 Ann. Cas. (1913B), 238). The petition alleges that other subscriptions were made by other persons before and after Mr. Estill's promise to give $500, and that all of them, including Mr. Estill's verbal promise, were mutual subscriptions for the common object. Notwithstanding this allegation, we do not think the case in hand comes within the code section quoted. That section has application to mutual subscriptions, which means written promises mutually entered into by the subscribers. The statute is not sufficiently broad to include oral promises, and can not be extended so as to cover the promise in the case at bar.

A promise to donate money to a charitable purpose is gratuitous and unenforceable unless some consideration therefor exists. Such a promise amounts to nothing more than a voluntary offer which may be withdrawn before being acted on. But if, on the faith of the promise, the promisee before withdrawal of the promise expends money and incurs enforceable liabilities in furtherance of the enterprise the promisor intended to promote, the consideration is supplied and the promise is rendered valid and binding. *Owenby* v. *Georgia Baptist Assembly,* supra; School District of Kansas City *v.* Sheidley, 138 Mo. 672 (40 S. W. 656, 37 L. R. A. 406, 60 Am. St. R. 576) ; McCabe *v.* O'Connor, 69 Ia. 134 (28 N. W. 573) ; Amherst Academy *v.* Cowls, 6 Pick. (Mass.) 427 (17 Am. D. 387) ; Richelieu Hotel Company *v.* International Military Encampment Company, 140 Ill. 248 (29 N. E. 1044, 33 Am. St. R. 234) ; 1 Page on Contracts, § 298; 1 Elliott on Contracts, § 228. In 1 Parsons on Contracts (8th ed. *453) it is said: "On the important question, how far voluntary subscriptions for charitable purposes, as for alms, education, religion, or other public uses, are binding, the law has in this country passed through some fluctuation, and can not now be regarded as on all points settled. Where advances have been made, or expenses or liabilities incurred by others in consequence of such subscriptions, before any notice of

withdrawal, this should, on general principles, be deemed sufficient to make them obligatory, provided the advances were authorized by a fair and reasonable dependence on the subscriptions; and this rule seems to be well established." The death of the promisor before any liability has been incurred on the faith of the promise would of course serve to withdraw or revoke the promise.

We do not think that because the promise to give rests in parol it is unenforceable after it has been acted on. If the promise is found in a written subscription by the promisor and others, the mutual promises furnish a consideration under our code. But the promise to give to a charitable purpose need not be in writing to be an enforceable contract, where the promisee has acted on the faith of it. So long as the promise is gratuitous it is without consideration; but when acted on, there is not only mutuality of contract but a consideration for the contract. If A promise to buy a house for his nephew, that is nothing; but if A promise to buy a house for his nephew, and request the nephew to enter into a contract of purchase in the nephew's own name, and the nephew does so, the law implies a promise on the part of A to reimburse the nephew any part of the purchase-money which he may be called on to pay. Skidmore v. Bradford, L. R. 8 Eq. 134.

4. It was alleged that in a local newspaper owned by a company of which Mr. Estill was the president and the chief, if not the sole, stockholder, there appeared an article calling attention to the merits of the enterprise, giving a list of the subscriptions up to that time, which included a subscription of Mr. Estill for $500. It was further alleged that although Mr. Estill was cognizant that his subscription had been taken for $500, and that it had been so published to the world through his newspaper, he never repudiated or disavowed the same. The ground of the special demurrer was, not that it was improper to plead evidentiary facts, but that the evidentiary facts pleaded were irrelevant. These allegations were relevant as tending to show an admission by Mr. Estill of his promise to donate $500 to the plaintiff for the purpose of constructing the building.

*Judgment reversed. All the Justices concur.*