RUSSIAN SYMPHONY SOCIETY, INC., Appellant, *v.* CARL A. HOLSTEIN, Respondent.

First Department, January 13, 1922.

Contracts — action on subscription contract to finance concerts — concerts were given as agreed — finding that plaintiff acted on contract justified — contract became mutually binding when acted on by plaintiff.

In an action to recover the amount of a subscription by the defendant for the purpose of financing a series of concerts by the plaintiff, it appeared that the defendant signed his name to a subscription contract by which he agreed to pay the amount set opposite his name in accordance with the terms of the agreement, and that the concerts were given as contemplated by the subscription agreement.

*Held,* on all the evidence, that the trial court was warranted in finding that the plaintiff acted and relied upon the request of the defendant in incurring the expenses necessary for the production of the concerts, and that the defendant executed the agreement.

When the subscription agreement was accepted and acted on by the plaintiff, the contract became mutually binding, for there then arose an implied agreement on the part of the plaintiff to produce the concerts in accordance with the agreement.

APPEAL by the plaintiff, Russian Symphony Society, Inc., from an order and determination of the Appellate Term of the Supreme Court, First Department, in favor of the defendant, entered in the office of the clerk of the county of New York on the 15th day of November, 1920, reversing a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District, in favor of the plaintiff.

*Louis G. Bernstein,* for the appellant.

*A. Stedman Jameson,* for the respondent.

LAUGHLIN, J.:

The pleadings are quite informal. The record merely shows that the action was predicated on a subscription contract, and that the answer was a general denial. It is, therefore, to be assumed that the plaintiff was duly incorporated and was authorized to make the contract on which the action is brought.

It appears that the plaintiff annually for upwards of twenty

years had conducted a series of high-class orchestral concerts consisting largely of music by Russian composers, and that it was enabled so to do only by subscriptions made in advance, and that, after the payment of the subscriptions, there was always a deficit. Defendant was one of the plaintiff's patrons and apparently was interested in having the concerts continued. In order to enable plaintiff to produce and conduct the concerts for the season of 1917–1918 and for the two succeeding seasons, it solicited in advance subscription agreements in writing as follows:

" We, the undersigned, desiring to help the Russian Symphony Society to produce and conduct a series of high class orchestral concerts consisting largely of music by Russian composers during the season of 1917 and 1918, and for the two succeeding seasons (making three seasons in all) and in further consideration of one dollar ($1) each to the other paid, do hereby agree with the Russian Symphony Society (Incorporated) to pay, for each season, the amounts set opposite our respective names, in accordance with the terms of this agreement when and as called for by vote of the Board of Directors of the said Russian Symphony Society. Twenty per cent. (20%) of the amount subscribed may be called for after November 1st, 1917, as working capital.

" Should the receipts equal the expenditures the amounts called for and paid by the subscribers shall be returned. The profits, if any, shall be subject to the disposal of a majority vote of the subscribers."

This subscription agreement was presented to and signed by the defendant, among others, who wrote opposite his name his business address and the words " fifty dollars." He does not deny that he signed it, and admits that the words " fifty dollars " are in his handwriting, but he testified that he did not remember whether or not he read it, and that his understanding at the time was that he was subscribing $100 for a box, and he testified that he subscribed and paid $100 for a box, and that he did not recollect why he wrote " fifty dollars." The concerts were given as contemplated by the subscription agreement. The reasonable inference, therefore, is, and the trial court was warranted in finding, as it did, that the plaintiff acted and relied upon the request of the defendant in incurring

the expenses necessary for the production of the concerts and that the defendant executed the agreement.    The theory upon which the Appellate Term reversed the judgment, and upon which its determination is sought to be sustained, is that the agreement was not mutually binding upon the parties, and that there was no consideration therefor.    (See 113 Misc. Rep. 344.) We are unable to agree with that view of the case.    Doubtless plaintiff did not become obligated at the time the agreement was signed to give the concerts; but when, acting upon the requests of the subscribers, it determined to give them, and made the necessary arrangements and incurred the expenses incident thereto, the contract became mutually binding, and it thereupon became the duty of the plaintiff to give the concerts, and to account to defendant under the contract for any surplus, and of the defendant to pay his subscription.    (*Keuka College* v. *Ray,* 167 N. Y. 96; *Central Presbyterian Church* v. *Thompson,* 8 App. Div. 565; *Roberts* v. *Cobb,* 103 N. Y. 600; *Richmondville Union Seminary* v. *McDonald,* 34 id. 379; *Presbyterian Society* v. *Beach,* 74 id. 72; *Barnes* v. *Perine,* 12 id. 18; *Matter of Conger,* 113 Misc. Rep. 129; *Mechanicville War Chest, Inc.,* v. *Butterfield,* 110 id. 257.)    Here there was an express request on the part of the subscribers to the plaintiff to give the concerts, and an express agreement on their part, in the event that the concerts were given, to pay each year the amount subscribed; and when the subscription agreement was accepted and acted upon by the plaintiff, there arose an implied agreement on its part to produce the concerts in accordance with the agreement, for otherwise the object of the plaintiff in requiring the subscriptions, and of the subscribers in making them, could not have been attained.    (*Wood* v. *Duff-Gordon,* 222 N. Y. 88.    See, also, *Cohen & Sons* v. *Lurie Woolen Co.,* 232 N. Y. 112.)    The decisions relating to subscription agreements, which are in the nature of offers or options, and become mutually binding when accepted and acted upon, govern in the disposition of this appeal, rather than decisions relating to the general rule applicable to executory contracts for the sale or purchase of goods, relied upon by the respondent, of which *Schlegel Mfg. Co.* v. *Cooper's Glue Factory* (231 N. Y. 459) is the latest.    The rule applicable to the latter class of contracts is that they must be mutually binding upon both parties from

the outset, for the reason that otherwise one party might be obliged to hold himself in readiness to deliver goods whenever ordered, whereas the other party might be under no obligation to give any order for goods. But even such contracts are valid, although the quantity of goods to be purchased is indefinite, providing there is an obligation on the part of the buyer to take such quantity as may be required in his business. (*Schlegel Mfg. Co.* v. *Cooper's Glue Factory, supra.*)

It follows that the determination of the Appellate Term should be reversed, with costs, and the judgment of the Municipal Court affirmed, with costs.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Determination reversed and judgment of Municipal Court affirmed, with costs to appellant in this court and in the Appellate Term.