I & I Holding Corporation, Appellant, *v.* Isidor Gainsburg, Respondent.

First Department, June 18, 1937.

*Leonard G. Bisco* of counsel [*Samuel Chugerman* with him on the brief; *Newman & Bisco*, attorneys], for the appellant.

*Bernard Hershkopf*, for the respondent.

Cohn, J. Plaintiff moved to strike out the third, fifth and sixth defenses contained in the answer as insufficient in law. The court, however, found the complaint bad for failure to allege

sufficient consideration and dismissed it without leave to amend. It accordingly held that it was unnecessary to pass upon plaintiff's motion to strike out the defenses.

The action was brought to recover upon defendant's written pledge of $5,000 made to Beth Israel Hospital. The charitable subscription signed by defendant reads as follows: " To aid and assist the Beth Israel Hospital Association in its humanitarian work, and in consideration of the promises of others contributing for the same purposes, the undersigned does hereby promise to pay to the order of the Beth Israel Hospital Association at the Hospital Building, Stuyvesant Park East, New York City, the sum of * * * $5,000.00 payable in 4 year installments — $1250 each. The undersigned further requests each and every other contributor to make his contribution in reliance upon the contribution of the undersigned herewith made."

The complaint sets forth various mesne assignments of the pledge in suit, the first by Beth Israel Hospital Association to another and finally an assignment to the plaintiff. A copy of the pledge is annexed to the complaint and made a part thereof. The pleading alleges in paragraph seventh, " That upon the said subscription and agreement, the said Beth Israel Hospital Association proceeded in its humanitarian work, obtained other like subscriptions, expended large sums of money and incurred large liabilities, and has otherwise duly performed all the conditions on its part to be performed." Failure on the part of defendant to pay any part of the subscription is then set forth and judgment is accordingly demanded in the sum of $5,000, with interest beginning on May 15, 1929.

The Special Term has held that the complaint which purported to set forth a cause of action upon the aforesaid pledge was insufficient. It ruled that the language of the pledge must control; that the consideration set forth therein was insufficient, and that the promise to make any payment thereunder was unenforcible. Plaintiff contends that the complaint is good and that its sufficiency is to be determined not upon the language of the pledge alone, but upon the other allegations of the complaint as well.

It is undoubtedly true that where a contract on which an action is based is in writing and it is attached to the complaint as an exhibit, if there is a variance between the contract and the allegations of the complaint, the terms of the contract must control. (*Greeff* v. *Equitable Life Assurance Society*, 160 N. Y. 19, 29; *Burdick* v. *Fuller*, 199 App. Div. 94; *Queen* v. *Benesch*, 191 id. 83.)

There is, however, a well-defined distinction between mere recitals and contractual rights and obligations in a written instrument. In the former case, parol evidence is permissible to show

true consideration, while in the latter case this may not be done. " Recitals, even recitals of consideration, unless intended themselves to embody a contractual right or obligation, may be contradicted." (*Hutchison* v. *Ross*, 262 N. Y. 381, 398.) Here, the pledge merely contained a recital of consideration which might be explained, or might be modified by proof of any other or additional consideration. This rule is well expressed in *Sturmdorf* v. *Saunders* (117 App. Div. 762; affd., 190 N. Y. 555), where MILLER, J., writing for the court, said (at p. 766): " Whenever a recital of consideration in an instrument is merely the evidence of a fact it is subject to explanation, but when it is a substantive part of the contract, embraced within the covenant of one of the parties, it cannot be thus contradicted." Extrinsic evidence is permissible for the purpose of sustaining a contract which is attacked on the ground of want of consideration. (*Strobe* v. *Netherland Co., Inc.*, 245 App. Div. 573; Richardson on Evidence [4th ed.], § 426.)

The consideration in the present case is found in the obligations undertaken by the promisee, the hospital association. The fulfillment of such obligations could not take place until after the execution of the pledge. Allegations of such performance contained in the complaint must, of necessity, be considered for the purpose of determining whether there was consideration for the promise made in the pledge. It is clear that in a case of this character in testing the sufficiency of the complaint, the language of the pledge alone does not control; we may go outside the writing for allegations and proof of the existence of, or the want of consideration.

In *Presbyterian Church of Albany* v. *Cooper* (112 N. Y. 517), one of the authorities relied upon by defendant, the subscription agreement recited a consideration of one dollar and the promises of other subscribers. The court there, applying the rule, said (at pp. 521 and 522): " The recital of a consideration paid does not preclude the promisor from disputing the fact in a case like this, nor does the statement of a particular consideration which, on its face, is insufficient to support a promise, give it any validity, although the fact recited may be true. * * * *Some consideration must, therefore, be found other than that expressly stated in the subscription paper, in order to sustain the action.*" (Italics ours.)

Where no consideration is stated in a charitable pledge or where there is a recital of insufficient consideration, the holder may allege and prove the true consideration and, in doing so, is not limited to the words in the agreement. (*Keuka College* v. *Ray*, 167 N. Y. 96, 100; *Matter of Taylor*, 251 id. 257; *Matter of Taylor*, 236 App. Div. 571; *Presbyterian Church of Albany* v. *Cooper*, 112

N. Y. 517; *Matter of Barker*, 158 Misc. 803; affd., 249 App. Div. 336.) In the *Keuka College* case the Court of Appeals (at p. 100) said: " The doctrine, however, may be regarded as well established that, if money is promised to be paid upon the condition that the promisee will do some act, or perform certain services, then the latter, upon the performance of the condition, may compel payment. Nor need a request to the promisee to perform the services be expressed in the instrument; it may be implied. (*Trustees of Hamilton College* v. *Stewart*, 1 N. Y. 581; *Barnes* v. *Perine.* 12 id. 18; *Presb. Church of Albany* v. *Cooper*, 112 id. 517.) "

In *Matter of Taylor* (251 N. Y. 257), another authority upon which defendant relies, it was decided that to uphold a claim against an estate based upon notes which upon their face indicated that they were agreements for charitable purposes, proof of the actual consideration for the subscriptions was necessary before the pledges could be enforced. The court (at p. 262) said: " Obviously the transactions represented by the notes were not commercial transactions. But if a thing is to be done by the promisee, be it ever so small, this is a sufficient consideration to sustain the promise. Was there a promise on the part of the churches or either of them to do something in return for which the notes were given? (*Allegheny College* v. *Nat. Chautauqua Co. Bank*, 246 N. Y. 369.) " And at page 263 the court said: " The question remains whether the church, after the note was given, altered its position to the knowledge of the promisor and in the reasonable belief that the promise would be kept."

It is to be noted that the Court of Appeals in reversing the judgment remitted the case for a new hearing to afford an opportunity of proving whether there was consideration to sustain the promise outside of the recital " for value received " found in the notes. The surrogate upon a retrial found ample consideration *upon proof taken*, and sustained the validity of the one subscription before him. The surrogate's decree was affirmed (*Matter of Taylor*, 236 App. Div. 571). The appellate court, in language that is particularly pertinent to the facts here (at p. 573), said: " The church officials relying upon the covenant and promise of all of the members, including decedent, did maintain and conduct a church and assumed obligations to pay the funds necessary for such purposes. There is no distinction in principle between the obligation incurred by church trustees who undertake to build a church and the obligations of the same men who undertake to conduct, run and pay the expenses of one already built, and there is no distinction between pledges made by members for one purpose or the other."

As it is clear from the foregoing that the law permits plaintiff to go outside the pledge agreement to prove consideration, we may examine the complaint to ascertain whether its allegations set forth sufficient legal consideration for the promise of defendant to pay. Paragraph seventh specifically alleges the consideration upon which the pledge was made. It states that the hospital, relying upon said subscription, " proceeded in its humanitarian work, obtained other like subscriptions, expended large sums of money and incurred large liabilities." Sufficient consideration is thus clearly set forth. That such expenditures were made for the upkeep of the hospital and at the request of defendant is not only implied by law but is also expressed in the pledge as follows: " To aid and assist the Beth Israel Hospital Association in its humanitarian work  *  *  *  the undersigned further requests each and every other contributor to make his contribution in reliance upon the contribution of the undersigned herewith made."

The defendant's promise followed by the hospital's action thereon makes the binding agreement. As the complaint sets out these essentials, it is sufficient. (*Allegheny College* v. *National Chautauqua County Bank*, 246 N. Y. 369; *Keuka College* v. *Ray, supra; Presbyterian Society* v. *Beach*, 74 N. Y. 72; *Barnes* v. *Perine*, 12 id. 18; *Russian Symphony Society, Inc.*, v. *Holstein*, 199 App. Div. 353; Williston on Contracts [Rev. ed. 1936], §§ 116, 139; American Law Institute, Restatement of the Law of Contracts, § 90.)

In this State " we have adopted the doctrine of promissory estoppel as the equivalent of consideration in connection with our law of charitable subscriptions." (CARDOZO, Ch. J., *Allegheny College* v. *National Chautauqua County Bank, supra*, at p. 374.) The law of promissory estoppel in connection with charitable subscriptions is now generally accepted. (*Brown* v. *Weir*, 293 S. W. [Tex.] 916; *Eastern States Agr. & Ind. League* v. *Vail's Estate*, 97 Vt. 495, 508; 124 A. 568; *Trustees of Amherst Academy* v. *Cowls*, 23 Mass. 427; *Martin* v. *Meles*, 179 id. 114; 60 N. E. 397; *Y. M. C. A.* v. *Estill*, 140 Ga. 291; 78 S. E. 1075; *Robinson* v. *Nutt*, 185 Mass. 345; 70 N. E. 198; *U. of Pa.'s Trustees* v. *Coxe's Exrs*, 277 Penn. St. 512; 121 A. 314; *Porter* v. *Commissioner of Internal Revenue*, 60 F. [2d] 673.)  " If on the faith of the subscription, before its withdrawal, the promisee performs some act — expends money, incurs enforceable liabilities, etc.— in furtherance of the enterprise the promisor intended to promote, consideration for the subscription is supplied, and it is thereby rendered valid, binding, and enforceable." (38 A. L. R. 881.)

The subscriber who fills in a subscription blank and the charity promisee do not contemplate a bargain in a mercantile sense. Nevertheless, where the subscriber agrees to pay for a certain

purpose and the promisee thereafter spends the money for that purpose, both intend a binding pledge and the former should be compelled to live up to his promise. The acts of the hospital here in reliance upon the pledge made by defendant, as alleged in the complaint, furnished the consideration for the promise to pay and created the promissory estoppel.

We accordingly conclude that the court is not limited to the language of the subscription agreement for the purpose of ascertaining the consideration for the promise by defendant to pay; that sufficient consideration for the pledge is alleged in the complaint; that the complaint sets forth a cause of action, and it should not have been dismissed.

As to the plaintiff's motion to strike out the third, fifth and sixth defenses, we think that motion should have been granted to the extend of striking out the fifth defense, which averred that the pledge was non-assignable. It appears on the face of the pledge agreement that the promise was to pay " to the order of the Beth Israel Hospital Association." We have been unable to find any authority or statute which condemns the assignment of a charitable subscription. In many cases a promise to pay in the future would be of little value to an institution supported by voluntary contributions unless it could be assigned for the purpose of obtaining funds. Contracts of this character have been held assignable in other jurisdictions. (*Oconto Chamber of Commerce* v. *Grandall*, 175 Wis. 447; 185 N. W. 544; *Hopkins* v. *Upshur*, 20 Tex. 89.)

The order and judgment in favor of defendant dismissing the complaint should be reversed, with costs, and plaintiff's motion should be granted to the extent of striking out the fifth affirmative defense from the answer.

GLENNON, UNTERMYER and DORE, JJ., concur; MARTIN, P. J., dissents and votes for affirmance.

MARTIN, P. J. (dissenting). The recitals of consideration in the subscription here involved are clearly insufficient to bind the donor. The complaint alleges that " upon the said subscription and agreement, the said Beth Israel Hospital Association proceeded in its humanitarian work * * * expended large sums of money and incurred large liabilities and has otherwise duly performed all the conditions on its part to be performed." The writing required the hospital to do nothing. Consideration must be found, if at all, in the allegation that upon the said subscription and agreement the hospital association " proceeded in its humanitarian work * * * expended large sums of money and incurred large liabilities." This is nothing more than an allegation that the hospital has carried on the general purposes for which it was organized.

In *Allegheny College* v. *National Chautauqua County Bank* (246 N. Y. 369) Chief Judge CARDOZO said: " Certain, at least, it is that we have adopted the doctrine of promissory estoppel as the equivalent of consideration in connection with our law of charitable subscriptions. So long as those decisions stand, the question is not merely whether the enforcement of a charitable subscription can be squared with the doctrine of consideration in all its ancient rigor. The question may also be whether it can be squared with the doctrine of consideration as qualified by the doctrine of promissory estoppel."

An analysis of that case will disclose that the statement quoted must be regarded as dictum. The promisor wished to have a memorial to perpetuate her name, and she imposed the condition that the " gift " should " be known as the Mary Yates Johnston Memorial Fund." The court said: " The moment that the college accepted $1,000 as a payment on account, there was an assumption of a duty to do whatever acts were customary or reasonably necessary to maintain the memorial fairly and justly in the spirit of its creation. * * * We think the duty assumed by the plaintiff to perpetuate the name of the founder of the memorial is sufficient in itself to give validity to the subscription within the rules that define consideration for a promise of that order."

A consideration of the cases leading up to Judge CARDOZO's statement in the *Allegheny College* case shows that in each instance something specific was done in reliance upon the promise, an obligation incurred, or steps taken to carry out the object of the subscription.

The first case considered was *Barnes* v. *Perine* (12 N. Y. 18) wherein the defendant was a member of a religious society which owned a lot with a church thereon. He subscribed, with others, a writing by which he promised to pay $150 to the trustees of the society or a building committee towards a fund of $5,000 for the erection of a church on the site of the old one and he afterwards took part in several meetings of the members of the society and the subscribers to the fund at which a building committee was appointed and resolutions adopted requesting the trustees to dispose of the old church and directing the building committee to erect a new one on its site for the use of the congregation with the consent and advice of the trustees. The evidence proved that the society removed the old church and erected a new one and the defendant was held liable for the amount of his subscription.

The case of *Presbyterian Society* v. *Beach* (74 N. Y. 72) involved a subscription paper by which the subscribers agreed to pay the sums set opposite their names to the treasurer to be appointed by

them for the purpose of building a Presbyterian church edifice; a treasurer was duly appointed and at meetings at which defendant was present and expressed no dissent the religious society was organized, trustees elected, committees appointed and the work commenced and carried through with defendant's knowledge and in reliance upon the subscriptions. In subsequent proceedings the plaintiff was incorporated. It was held there was a good consideration for the undertaking of the defendant.

In the third case cited by Chief Judge CARDOZO, *Roberts* v. *Cobb* (103 N. Y. 600), it appeared that persons interested in the First Baptist Church of Tarrytown had been engaged in building a church edifice and there was a mortgage on the church property upon which there was due $15,000. The pastor of the church called upon the defendant's testatrix, a member of the church, and requested her to make a contribution. She promised to contribute $2,500 in cash toward the payment of the mortgage if the pastor would secure pledges for the balance of $12,500, and he promised to make the effort. He at once set about raising the requisite sum and secured pledges for that amount. After having done so he called upon defendant's testatrix and she, finding it inconvenient to pay cash in discharge of her subscription, executed a note for $2,500. She subsequently paid $500 thereon and in an action for the balance it was held the note was based on a sufficient consideration. It was pointed out that the deceased promised to give the pastor $2,500 if he would procure subscriptions for $12,500; he accepted the offer and performed the condition, and thus it was held there was adequate consideration to uphold the promise.

The last case referred to was *Keuka College* v. *Ray* (167 N. Y. 96). There a charter had been granted in 1892 to the college provisionally incorporating it until the requirements should be fully met. The president of the board of trustees endeavored to procure subscriptions to the amount of $100,000 which the law required as a corporate fund in order that the college might receive a permanent charter. He approached the defendant and informed him concerning the college project, and that another individual had promised, in the event of $20,000 being raised within a given time, to give $5,000 to the fund; $7,000 or $8,000 of the $20,000 had already been subscribed and the college was endeavoring to raise the balance; the defendant gave a note for $500 and the college was successful in meeting the conditions of the benefactor through the subscriptions to the amount of $20,000 being made. It was held that there was ample consideration for the note. Judge GRAY, writing for the court, said: " The discussion is reduced simply to this, whether the agreement which is sought to be enforced

and which is a voluntary promise on the part of the defendant, expressly, or impliedly, either imposes upon the promisee some obligation which is assumed, or requests of the promisee the performance of services, which are to be performed upon the strength of the promise. If those conditions are met, then, within the rule of law, there is a consideration which will suffice to uphold the agreement, or the promise."

The cases in foreign jurisdictions which have been called to our attention as supporting the theory of promissory estoppel as equivalent to consideration for charitable subscriptions all involve the promotion of a special purpose, as distinguished from the general charitable purposes, of the donee.

Subscriptions to charitable funds are usually induced by the noblest motives and are generally given with honest intent of fulfillment. Circumstances may develop which render it impossible for the donor to carry out his intention. In many instances, however, opportunity for exploitation and self-glorification is presented and there is no genuine desire to promote the purpose for which the subscription is solicited. When the excitement and the shouting ceases, the project fails, unless some way is found to make subscribers live up to their promises. The courts, in their efforts to hold such subscriptions binding, appear to have adopted theories and reasoning completely out of harmony with the fundamental concept of consideration. In 1 Williston on Contracts ([Rev. ed. 1936], § 116) it is said: " The view most commonly held is that such a subscription is an offer to contract which becomes binding as soon as the work towards which the subscription was promised has been done or begun, or liability incurred in regard to such work on the faith of the subscription." Recognizing the fact that a charitable subscription is intended as a gift and not as a bargain it may well be that the time has come for the Legislature to say that a charitable subscription requires no consideration to make it enforcible. We, however, find no occasion to extend the principle of promissory estoppel, and think it should be limited to those instances where a specific obligation contemplated by the donor and donee is incurred in reliance upon the subscription.

The order and judgment appealed from should be affirmed.

Judgment and order reversed, with costs, and plaintiff's motion granted to the extent of striking the fifth defense from the answer.