## HALL v. WINGATE.

1. The general demurrer to that portion of the defendant's answer which
was in the nature of a cross-bill was properly overruled.

(a) The agreement alleged in the defendant's cross-action was not void
under the statute of frauds, because acceptance and performance of the
alleged parol offer of the plaintiff to the defendant was alleged, and
also it was alleged that the defendant had complied with the proposal
of the plaintiff to the full satisfaction of the latter.    A contract even
as to the sale of an interest in real estate may consist of an offer,
acceptance, and performance.

(b) The alleged parol offer alleged to have been accepted and performed
by the defendant, because of the sale of the two bodies of timber upon
terms accepted by the plaintiff, constituted such performance as sup-
plied the consideration proposed by the plaintiff.

(c) Nor was the parol contract created by the proposal and its acceptance
void for want of mutuality.    The test of mutuality is to be applied
as of the time the contract is to be enforced; and if the promisee ac-
complish the object contemplated, then the promise is rendered valid
and binding.    "A promise may be nudum pactum when made because
the promisee is not bound, but it becomes binding when he subsequently
furnishes the consideration contemplated by doing what he was ex-
pected to do."

(d) Nor was the alleged agreement without consideration because the
defendant as a partner of the plaintiff was charged with the duty of
conducting the farming operations of the partnership, there being no
stipulation in the written contract relating to the partnership that the
defendant should give his entire time and attention to the services of
the partnership, but only an implied obligation that he should give due
diligence and all necessary attention to the farming of the partnership
plantation.

(e) The alleged contract can not be held as a matter of law to be uncon-
scionable, unreasonable, or unjust.    It could not be held as a matter
of law to be such an agreement as no sane man not acting under a
delusion would make and that no honest man would take advantage of.

(f) It was not error to overrule the special demurrer to paragraph 18,
in view of the fact that the information sought to be elicited, so far as
material to the merits of the cause, except as hereafter stated, was fully
supplied in other portions of the defendant's answer.    The statement
that the offer was accepted, following the allegations of the defendant
as to the time, place, and circumstances under which the alleged offer
was made, and being immediately followed by the allegation that the

defendant immediately went to work in the endeavor to sell the property as proposed, without more, can raise no inference other than that the acceptance was at the precise time and place and under the circumstances named in the proposal; and for that reason it is a statement of a fact, and not a mere conclusion.

(g) Likewise the statement that a sale was made to A is a statement of fact, as against the sole objection that it is a mere conclusion of the pleader; and a demurrer based merely upon that ground is not sufficiently specific to require a statement as to when and how the trade was consummated.

2, 4. The allowance of the amendment offered by the defendant for the purpose of obtaining the opening and conclusion, even if erroneous, was harmless to the plaintiff. The nature of the defendant's cross-action was such, when construed with the admissions in the direct answer to the several paragraphs of the petition, as that the burden of sustaining an affirmative devolved upon the defendant and brought him within the well-settled general rule that the party upon whom rests the burden of proving his case and establishing his contentions at law is entitled to the opening and conclusion. However, the defendant admitted that unless he sustained the allegations of his cross-action as required by law, the plaintiff was entitled to all of the relief prayed for. It was not necessary to admit that an accounting was necessary; for a finding that the partnership should be dissolved would include necessity for an accounting, and the establishment of the contract as claimed by the defendant would dispense with the necessity of an accounting.

3. The verdict in behalf of the defendant was authorized by the evidence.

5. The contents of a memorandum made by one party to an alleged agreement during negotiations which led up to the agreement, consisting of writing and figures upon a slip of paper which was signed by one party and then handed to the other, may be used in corroboration of the testimony of the party to whom the slip was handed, where the parties differ as to the terms and conditions of an alleged parol contract. Such evidence- goes to establish or disprove the existence of a parol agreement, and its admissibility is unaffected by the rule that parol evidence is inadmissible to change or vary a written contract.

6. The instructions of which complaint is made in grounds 6 and 7 of the motion for a new trial were not erroneous for any reason assigned.

7. In any case where the burden of proving a fact by clear, strong, and satisfactory evidence and beyond a reasonable doubt is imposed, it is not error to properly explain and define the meaning of the term "a reasonable doubt."

8. Where there is no conflict in the evidence as to a particular fact or facts, it is not error for the court in charging the jury to assume that fact to have been proved. Nor is it error, after having stated that this much of the contention of one of the parties is not disputed by the other, to omit to state all of the contentions of one of the parties while stating the contentions of the opposite party which are at variance therewith. In the absence of a timely written request, the court is not obliged to specifically refer to the contentions of either of the parties otherwise than as they are presented in the pleadings, and reference to all of the minute details in the evidence is rather to be

avoided than practiced. The statement by the court that both parties agree upon a point can not tend to impress the jury that the court is favorable to one party rather than to the other, when the record discloses that there was no dispute between the parties upon this point.

9. It was not error in this case to charge the jury that as a matter of law payment, unless stipulated definitely by the parties, must be in cash or its equivalent, when this instruction is viewed in connection with the context. The court explained what he meant by the use of the word "equivalent" by immediately following the foregoing instruction by a charge that a party to a contract might, by the acceptance of money, notes, or any other thing of value, waive the requirement that the payment should be in money.

10. For reasons stated in ruling upon the demurrers, as well as because it appears from the record that there was evidence that the plaintiff gave the defendant until January 2, 1924, to comply with the agreement, the thirteenth ground of the motion for a new trial is without merit.

11. The evidence of the defendant mentioned in the preceding note was sufficient to authorize the instruction given by the court of which complaint is made in ground 14 of the motion for a new trial.

12. "If there be a valid consideration for the promise, it matters not from whom it is moved; the promisee may sustain his action, though a stranger to the consideration."

13. An exception that the court in a particular instruction has assumed that the contract was as claimed by the opposite party, to the injury of the complaining party, can not be sustained merely because the court does not present each several contention pari passu and at the same time, if in another portion of the charge and while presenting the contentions of the losing party his side of the case is fairly and adequately presented.

14. The mere fact that in concluding his instructions as to one of the parties the judge used the expression, "it would be your duty under your oaths to find a verdict for the defendant," while omitting to insert the words "under your oaths" with reference to the plaintiff, will not require the grant of a new trial "upon the ground that this language must have unduly impressed the jury with their obligation to find for the defendant."

15. The written requests for instructions, so far as the same were pertinent and correct statements of law, were sufficiently presented in the general charge.

16. It is true that specific performance of a voluntary agreement will not be decreed; but an assignment that the verdict in the present case was contrary to law can not be supported upon this ground, in view of the fact that there was evidence from which the jury was authorized to find that there was a valid parol agreement between the parties, which was satisfactorily fulfilled upon the part of the plaintiff.

17. There was evidence by the plaintiff to sustain the instruction of which complaint is made in ground 24 of the motion for a new trial, and the assignment that a contention of the plaintiff was misstated is not sustained.

18. The receiver was appointed upon the petition of the plaintiff. Au-

thority to borrow $10,000 to operate the farm for the year 1924 was asked by the receiver; and under the circumstances disclosed by the record there was no abuse of discretion in allowing the receiver to borrow the amount of money for the purposes mentioned, under the terms fixed by the court.

19. There was no error in that portion of the decree to which exception is taken.

No. 4252. DECEMBER 19, 1924. REHEARING DENIED FEBRUARY 24, 1925.

Equitable petition. Before Judge Custer. Baker superior court. January 12, 1924.

Early in 1916 the plaintiff and the defendant had a conversation in regard to the purchase of certain lands in Baker County. The plaintiff, now plaintiff in error, advised the defendant that the purchase of lands in Baker County was preferable to the purchase of such lands as the defendant had been looking at in Mitchell County. The defendant spent several weeks looking at lands in Mitchell County. Early in June, 1916, the plaintiff suggested to the defendant the purchase of what is known as the Newell plantation, and it was agreed that the plaintiff would go ahead and handle the purchase of the place; but nothing was done until October, when the plaintiff suggested that the defendant handle the matter with Mr. Newell, and the parties agreed on a maximum and a minimum price,—that they would not offer under $20,000 nor over $22,000. After numerous conferences the defendant purchased the Newell plantation for $20,500; $5500 to be paid in cash and a loan of $15,000 standing against the property to be assumed by the purchasers. Owing to a deficiency in the acreage of the land a deduction of $1200 was made from the cash payment, reducing it to $4300, which was paid by the plaintiff. On February 12, 1917, the parties entered into a contract whereby the plaintiff agreed to sell and the defendant to buy a half interest in the tract known as the Newell plantation in the eighth district of Baker County, Georgia, containing 4125 acres, more or less. The defendant agreed to pay for this land, at any time within seven years from January 2, 1917, $2750 with interest from February 20, 1917, at the rate of 8 per cent. per annum (representing one half of the cash outlay made by R. L. & W. H. Hall at the time the lands were purchased), and the sum of $7500 with interest on the latter amount from January 2, 1917, at the rate of 6½ per cent. per annum (representing one half of the loan payable to the John Hancock Life Insurance Company at the time the place was pur-

chased) ; also to pay one half of all sums expended for improvements, taxes, repairs, etc., and one half of all indebtedness due to R. L. and W. H. Hall or any other creditors of the firm known as Hall & Wingate, and any and all sums which may be due to R. L. and W. H. Hall by M. B. Wingate. The defendant, Wingate, was to conduct the farming operations upon the plantation, and for this service was to receive $700 per year and such farm produce made on the place as might be needed for his family use. Immediately upon the execution of this contract the defendant took possession of the Newell plantation, conducting the farming operations thereon, and continued to so conduct them until he was ousted on April 7, 1923, by the appointment of receivers at the instance of the plaintiff. In September, 1922, differences arose between the parties, and plaintiff proposed to defendant to wind up the partnership business, and negotiations were begun between them as to the disposition of the partnership assets. On December 14, 1922, according to the testimony of the defendant, the numerous previous conferences and negotiations between the parties culminated in the plaintiff making the defendant the following offer: according to the books the partnership indebtedness to the plaintiff was shown to be in the sum of $46,981.46, which included the original cash price paid for the plantation, less $1200 refunded on account of the deficiency in acreage. The plaintiff stated that the timber on the Newell place was worth $22,500. The plaintiff had a tract of land adjoining the Newell place, known as the Wimberly place, and wished to sell the timber upon that place, which in his opinion was worth $22,500; and, according to the defendant's allegation, "R. L. Hall then and there offered to this defendant that if he would, within such time as the defendant might name, not exceeding the expiration of the partnership agreement (which by its terms was to expire on February 12, 1924), pay to the said R. L. Hall the sum of $69,500, including the $22,500 to be derived from the sale of the timber on the Wimberly place, and including whatever sum might be realized from the sale of the timber on the Newell place, the said Hall would, upon the payment of said sum of $69,500, convey to this defendant all of the right, title, and interest of said R. L. Hall both in the Newell plantation and the partnership assets of the firm of Hall and Wingate."

The defendant testified that he then and there accepted the offer

as made, and immediately began efforts to sell the timber, and with the knowledge and approval of the plaintiff expended labor and expenses in cruising the timber and endeavoring to interest purchasers therein; and that finally, on April 5, 1923, he consummated a sale of the timber to the Blakely Hardwood Lumber Company for the sum of $70,000 upon terms of sale which were accepted by the plaintiff as compliance with the offer made to defendant. The plaintiff's recollection of the negotiations which culminated in the agreement, as stated in the brief of his counsel, is: "That dissensions did arise between him and Wingate in the fall of 1922, and a dissolution was proposed, Wingate first offering to sell out to Hall; that Hall later offered to sell out to Wingate, if Wingate would repay to Hall *before Christmas of that year* the amounts which the firm of Hall and Wingate then owed Hall; that they discussed the question of a written option, and Hall distinctly refused to give Wingate any option, but orally told Wingate that if he, Wingate, brought to Hall the money *by Christmas,* that he, Hall, would convey the firm assets to Wingate; that they also discussed the timber on the two places, and Wingate asked Hall's permission to sell the timber on the Wimberly place (owned by Hall alone) in conjunction with the timber on the Newell place (owned by the firm), and Hall agreed that (if it would help Wingate to sell the Newell timber) he might also put into the trade his, Hall's, individual timber on the Wimberly place, provided that neither tract of timber should be sold for *less than $22,500;* and it was agreed that whatever both tracts brought, if a sale was made, should be *equally divided* between the two tracts; but this offer was also *limited to the time before Christmas;* that Wingate spent several weeks before Christmas trying to sell the timber (the offer having been made in *November* and *not December 14*), but finally reported to Hall, a day or two before Christmas, that his efforts to sell had failed, and that they would have to go ahead with the farming operations for the new year,—and that this was done, Hall having advanced several thousand dollars additional supplies for the firm *between* that time and April 5; that of course both he and Wingate continued their efforts to sell the timber (they had been trying to do so for *many months before*), and that *timber stumpage advanced sharply in price* from the fall of 1922 up to April 5, 1923, and their joint efforts finally resulted in a sale of

the timber on the two places, April 5, 1923, for $70,000; that *not one word had* been said or intimated by Hall or Wingate or any one else, from just before Christmas, 1922, until after the sale of the timber was closed April 5, 1923, about the 'proposal' that Hall had made Wingate to sell out in the *fall of 1922,* and Wingate himself did not claim that it had ever been mentioned in that time; that that night *after* the sale of the timber was closed, and the checks and notes given for it had been turned over to R. L. Hall by the *purchasers* of the timber (Hall being the sole owner of the one half of the timber on the Wimberly place, and the *half owner* with the legal title to all of the timber on the *firm's* place, to secure him for the advances he had made the firm), it was remarked in the presence of Wingate that they would get together the next morning and *divide up the checks and notes* (between the two places, the one owned by the *firm,* and the one owned by Hall *individually*), and Wingate acquiesced in that proposition; that it was only *after* he had thought over the matter *that night,* and Wingate came back to see Hall about the division the *next day,* that Wingate then for the *first* time advanced the claim that the 'proposal' which had been made by Hall to him orally the *fall before,* was still of force, and that Hall, having received $70,000 in checks and notes ($10,000 of which would be invalid if a certain lawsuit as to the line around the timber was lost), that Hall must be construed to have 'accepted' said checks and notes 'as a compliance' with the terms of his said oral 'proposal' which had been made the *fall before.*"

On April 7, 1923, the plaintiff filed an equitable petition for the dissolution and winding up of the affairs of the partnership composed of the plaintiff and the defendant, alleging, among other things, that the partnership was so much in debt that it was doubtful if the defendant's equity was of sufficient value to pay his portion of the debts, and setting forth the claim as then asserted by the defendant, which the plaintiff alleged to be untrue; and that the defendant claimed that by virtue of his compliance with an oral agreement with the plaintiff he had fully paid the purchase-price of the Newell plantation and was entitled to a deed. The petitioner asked for the appointment of a receiver to hold the assets of the partnership, and for other purposes. Upon an interlocutory hearing the trial judge appointed receivers to take charge

of and conduct the plantation; and the case was tried by consent of both parties at the appearance term, July, 1923. The trial resulted in a finding in favor of the defendant. A motion for a new trial was overruled, and exception is taken to that judgment.

To the petition the defendant filed an answer, and in a portion of the answer in the nature of a cross-bill set up a parol contract which he asked to be decreed to be specifically performed, upon the ground that he had accepted the offer of the plaintiff of December 14, 1922, and had fully complied therewith, or, if he had not literally complied with all the terms of the proposal, any omitted requirements of the parol agreement had been waived by the plain-- tiff by his acceptance of a modification of the terms of payment. The plaintiff demurred to paragraph 15 of the defendant's answer, and the other paragraphs following the same which constituted the cross-bill, upon the following grounds: (1) the cross-bill sets forth no cause of action; (2) it sets forth no facts authorizing any of the relief prayed; (3) the cross-bill seeks to enforce an alleged contract which is unilateral and wanting in mutuality and had no consideration moving the plaintiff thereto; (4) the cross-bill seeks to set up and enforce an alleged contract which is void under the statute of frauds; (5) the alleged contract is so unjust, unfair, and unconscionable that specific performance should be refused; (6) the cross-bill seeks to set up an alleged contract which is void under the statute of frauds, and also because wanting in mutuality, and no facts are alleged showing performance thereof on the part of the defendant, nor are any facts alleged which would take the same out of the statute of frauds or supply mutuality thereto. Plaintiff also demurred on the ground that the allegation that the defendant accepted the offer made by the plaintiff is a mere conclusion of the pleader, and it is not alleged how, when, or where said alleged offer was accepted, also to the allegation as to the defendant having spent a great amount of labor and incurring expenses, on the ground that it is not alleged what labor or expense was incurred; and to the allegation as to the defendant having consummated a sale of the timber to the Blakely Hardwood Lumber Co., on the ground that it is a mere conclusion of the pleader; and as to said sale having been upon terms which were approved by said R. L. Hall and were accepted by him as a compliance with the offer made

by him to the defendant, on the same ground, and on the further ground that the terms are not set out. Also to the language, "likewise in accordance with the terms originally proposed and agreed to by said Hall when the said offer was made," as a mere conclusion without any facts to sustain it, and because it is contradictory to the defendant's pleadings preceding it.

Prior to the trial before the jury the court heard the demurrers, and to the judgment overruling them exceptions pendente lite were taken, and error is assigned upon them. Plaintiff also excepted pendente lite to the allowance of an amendment on July 18, 1923, which was offered "for the purpose of obtaining the opening and conclusion," the amendment containing an admission that unless the defendant sustained the allegations of his answer in the nature of a cross-bill, beginning with the fifteenth paragraph thereof and ending with the end of said original answer, the plaintiff would be entitled to an injunction and the other relief prayed against the defendant. The objections to the amendment were: (1) the case was not such as permitted the defendant to admit a prima facie case and assume the burden of proof; (2) even if the case were such, the statements in said amendment were insufficient to entitle said defendant to the opening and conclusion; (3) the amendment was irrelevant. Exception is taken that the court, after allowing the amendment, did allow the defendant the opening and conclusion. The court overruled these objections, and the point is raised in one of the grounds of the motion for a new trial, as well as in the exceptions pendente lite. The plaintiff also excepted pendente lite to certain portions of the decree entered upon the verdict on July 20, 1923, viz., that "the title to the property described in paragraphs one and two of this decree (the Newell plantations and all the partnership assets of Hall and Wingate) is decreed to be in M. B. Wingate upon the condition that he pay to the plaintiff, R. L. Hall, or to the clerk of this court for the benefit of said Hall, the sum of $2572.63, with interest at the rate of 7 per cent. per annum from April 5, 1923; such payment to be made by said defendant within thirty (30) days from this date; and upon the payment of said sum, paragraphs one and two of this decree shall have full force and effect." Plaintiff's objection was that the pleadings and evidence showed that the only offer of sale ever made by the plain-

tiff was of date of December 14, 1922, and the pleadings and the evidence also showed that the partnership had continued in business for several months after December 14, 1922, and had incurred other debts to the plaintiff and had carried on business, acquiring and disposing of assets during said interval, and there had been no accounting as to partnership transactions arising since December 14, 1922; and the defendant contended that no accounting was necessary, for during the trial of the case he had made an admission and statement that he was due the plaintiff for supplies and advances since December 14, 1922, $3042.63, with interest at 7 per cent. per annum, less the sum of $500 received by the plaintiff on April 5, 1923, with interest at 7 per cent. per annum, and that this is not in issue in a suit to be determined by the jury; but that if a verdict is returned in favor of the defendant, this will be protected by the court in its decree. It is alleged in the exceptions pendente lite that the defendant's admission did not obviate the necessity of an accounting for firm transactions since December 14, 1922, and that, even though a decree for specific performance was entered up against the plaintiff, the decree should require an accounting as to all firm transactions since December 14, 1922. The plaintiff further objected to the decree, because the allowance of only the sum of $2543.63 practically credited the defendant with "the sum of $500 received by plaintiff on April 5, 1923," when (a) there was no evidence showing that the plaintiff had ever received said sum of $500 on April 5, 1923, and (b) there were no pleadings authorizing said $500 to be credited on the amount of advances plaintiff had made to the firm of Hall & Wingate since December 14, 1922. A further objection to the decree "in the form in which it was" is that under the pleadings and the evidence the decree should embody a provision for an accounting.

Besides the general grounds that the verdict is contrary to the evidence, strongly against the weight of the evidence, and contrary to law, the motion for a new trial contains 21 grounds added by amendment.

(4) Because the court erred in allowing an amendment to the defendant's answer, made "for the purpose of obtaining the opening and conclusion," and in allowing the defendant to have the opening and conclusion in the case.

(5)   Because the court erred, after Wingate had testified that a slip of paper containing the following figures and writing:

"65,000.00
30
35,000
6.000M
65·

_____

47

_____

18
450

_____

65
4500

_____

69,500
New   47,000
Wimb   22,500

_____

$69,500
for tmbr o/c
& all R. L. Hall"

had been handed him by the plaintiff at the time that the alleged parol agreement was entered into between himself and the plaintiff, in permitting the witness to answer "what Mr. Hall said those figures were intended to represent, the 'New' following the figures $47,000," over the objections of plaintiff that "it would be parol evidence seeking to add to said writing, and that said writing did not comply with the statute of frauds;" whereupon the witness answered, "Mr. Hall and myself both understood the word 'New' on that slip to refer to the Newell place, and the word 'Wimb' followed by the figures '22,500' to refer to the Wimberly timber, and the $22,500 was the price asked by Mr. Hall for the Wimberly timber. The total figures 69,500 on that slip represented the full amount involved for the timber on the Wimberly place and the purchase-price of the Newell plantation." Also, because the court erred in thereafter admitting the said slip of paper, because at the time said paper was offered in evidence the plaintiff objected to its

introduction on the ground "that said paper did not comply with the statute of frauds, and that the parol evidence offered in connection therewith would not make the same admissible, and that any contract evidenced thereby was without definiteness and void." This ground of the motion sets forth that it was insisted to the court at the time that the evidence of Wingate to the effect that Hall had agreed with Wingate that he would sell to Wingate his, Hall's, half interest in the partnership assets if Wingate would pay him $47,000, the amount of the indebtedness agreed on by Hall and himself, and at the same time agreed that Wingate might sell the timber on the Wimberly place for $22,500,—in other words, that Hall would sell and convey to said Wingate his interest in the partnership assets and also the timber on the Wimberly place for $69,500 at any time before January 2, 1924, that Hall at that time gave Wingate this slip of paper with the figures and writing above quoted thereon, that Wingate then made him a counter-offer of $65,000, and they finally agreed on a proposition of $69,500, and that the purchase-price was paid over to Hall.

(6)  Because the court erred in charging the jury that "the defendant assumes the burden of proof in this case; that is to say, he undertakes to establish to your satisfaction, beyond a reasonable doubt, that a certain definite contract was made by Mr. Hall with him, and that all of the terms of said contract were carried out and performed by him, and by reason of that condition that he is entitled to have the title to this land decreed to be in him," because:

(a)  There was no legal evidence to support or authorize the charge, for the reason that there was no "certain and definite contract made by Mr. Hall with him," "all the terms" of which contract were afterwards "carried out and performed" by the defendant; this for the reason that (1) the so-called offer claimed to have been made by the plaintiff was never legally accepted by the defendant, so as to bind the defendant; (2) the alleged contract was void under the statute of frauds, both because it involved the sale of an interest in lands, and because it was not to be performed within a year, and there was nothing shown which would take the same out of the operation of the statute of frauds; (3) there was no consideration for the alleged contract when the alleged offer was made, or brought into existence after that time, because the evidence showed that the defendant was already bound to devote his entire

time and attention to his duties as a member of the firm of Hall & Wingate; (4) because the payment of $69,500, nothing being said as to the time of payment, necessarily implies payment in cash, whereas the undisputed evidence shows no payment to have been made in cash except about $13,500; and even if it be conceded that in accepting the notes given for the purchase-price of the timber the plaintiff waived the performance of the defendant's part of said alleged contract as to the payment of the entire $69,500 in cash, still such an alleged waiver would not constitute an actual carrying out and performance by the defendant of his part of the alleged contract. (b) The giving of this charge was error, because all questions as to the making of the alleged contract claimed by the defendant should have been eliminated from the case, because the alleged contract was void under the statute of frauds, being one not to be performed within a year, and because it was one for the sale of real estate, and it was void for want of mutuality and for want of consideration, and because the most which could have been claimed in favor of the defendant for the alleged arrangement claimed by him to have been made with the plaintiff was that it was a continuing parol offer to contract.

(7) Because the court erred in charging: "In simple form, gentlemen, the sole issue in this case for you to determine is whether such a contract was made as contended for by Mr. Wingate, and whether or not that contract was carried out and performed by him in accordance with the terms thereof." It is contended that there was no legal evidence to authorize the charge, because the undisputed evidence showed that there was no contract as contended for by Wingate which was carried out and performed by him in accordance with the terms thereof; that the so-called offer claimed to have been made by the plaintiff was never legally accepted by the defendant, it was void under the statute of frauds, it involved the sale of an interest in lands, it was not to be performed within a year, and nothing was shown which would take the alleged agreement out of the operation of the statute of frauds; that there was no consideration for the alleged contract, because the defendant was bound to devote his entire time and attention as a member of the firm of Hall & Wingate, and therefore whatever trade was produced by the expenditure of his time all belonged to the firm, and the defendant was already under obligation to do whatever he

could to promote the interests of said firm; that the permission given to the defendant to include the sale of the Wimberly timber along with the sale of the Newell timber was a mere privilege requested by him in order to give him a better chance to sell the Newell timber; and that all questions relating to the alleged contract should have been eliminated from the case, because that at most the evidence of the defendant showed only a continuing parol offer to contract on the part of the plaintiff, and for that reason the court should not have submitted to the jury any instruction referring to the alleged agreement as a contract.

(8) The court erred in charging the jury "that in civil cases you take the law from the court, and the evidence from the witnesses who testify, and to the one you apply the other and make up your verdict," because the effect of this charge was to exclude the documentary evidence introduced in the case.

(9) The court erred in charging the jury that "You would have no right to create in your minds a vague or fanciful doubt as to the contention of the defendant, but the doubt must be one reasonably entertained by you; one that arises from the evidence or lack of evidence and leaves your minds wavering, not satisfied as to his contention," because, the case being one for specific performance of an alleged parol contract, "movant contends the burden was upon the defendant to establish said alleged parol contract by evidence so clear and convincing as to leave no reasonable doubt as to its existence." Further exceptions to this ground are, that it is not a correct statement of the law as applicable to a civil case, and that the instruction unduly gave the jury an impression favorable to the defendant as to the amount of proof he would have to submit to them in order to prevail.

(10) The court charged the jury: "The defendant claims and contends that at some time last fall he and the plaintiff, R. L. Hall, had some differences in regard to the conduct of the partnership business in which they were interested, and that eventually R. L. Hall offered to take the amount of the indebtedness owing to him by the partnership in settlement for his, R. L. Hall's, interest in said partnership property. This much of the contention of the defendant M. B. Wingate is not disputed by the plaintiff, R. L. Hall." This instruction is assigned as error, because it excluded from the jury consideration of the fact that the plaintiff claimed

that whatever offer he made was limited to Christmas of the year 1922, and of the fact that the plaintiff contended, and even the defendant admitted, that nothing was said as to whether the payment was to be in cash or on credit at some later date, and the undisputed evidence showed that the amount of the indebtedness had never been paid or tendered to the plaintiff in cash; and because it excluded from the consideration of the jury the fact, admitted by the defendant, that the defendant was also to assume and pay the amount of the indebtedness of $15,000 to the John Hancock Life Insurance Company. A further exception is that the charge necessarily impressed the jury that the court was favorable to the contentions of the defendant.

(11) The court charged the jury "that as a matter of law the payments, unless stipulated definitely by the parties, must be in money or its equivalent." It is assigned as error that the words "or its equivalent" should have been omitted, and that the charge was especially harmful for the reason that "although the alleged contract under which the defendant claimed to be entitled to a verdict and decree for specific performance contained no stipulation as to how the $69,500 was to be paid, whether in cash or otherwise, and although the undisputed evidence showed that the same had not been paid in cash, but only a small part thereof had been paid in cash, yet said charge must have impressed the jury with the idea that if the notes which were given for the Wimberly timber and the Newell timber were 'the equivalent of cash,' in the jury's estimation, then and in that event the delivery of said notes to said R. L. Hall would constitute a compliance with Wingate's obligation under the alleged contract, and constitute a payment to the said Hall of the $69,500,—this regardless of whether the said Hall accepted the said notes in lieu of cash, or waived the payment of cash, or not."

(12) Because the court erred, after charging the jury "that as a matter of law the payments, unless stipulated definitely by the parties, must be in money or its equivalent," then charged: "However, a party to a contract might, by the acceptance of money, notes, or any other thing of value, waive the requirement that the payment should be made in money." It is insisted that this instruction impressed the jury that if the movant actually received the notes given for the Wimberly timber and the Newell timber,

that itself would constitute a waiver of the requirement that the payment should be made in money,—this regardless of whether the movant accepted the said notes as a compliance with the alleged contract or not; and that the charge impressed the jury with the idea that mere acceptance of the notes, if it was shown that the plaintiff did receive them, would constitute a waiver of the right to a payment in cash.

(13)  The court charged the jury that "The defendant further claims and contends that the plaintiff gave him until the expiration of the partnership contract on the 2d day of January, 1924, in which to exercise his right to purchase on the terms claimed by him." It is insisted that this charge was error, because there was no evidence that the plaintiff gave the defendant until the expiration of the partnership on January 2, 1924, to exercise his right to purchase on the terms claimed by him; because the court should have eliminated from the consideration of the jury any such alleged contract, because the evidence showed that it was never carried out by the defendant, because the alleged contract was void under the statute of frauds, because it was wanting in mutuality and was without consideration, and because the alleged contract was only a continuing parol offer to contract on the terms set out therein; as well as other objections based upon the nature of the contract, as set out in grounds 5 and 6 of the amended motion.

(14)  The court charged the jury that "The defendant claims and contends that he agreed to purchase the partnership property and the Wimberly timber at the price stated, and that the plaintiff, R. L. Hall, knew that he accepted the offer made, and that he, the defendant, M. B. Wingate, immediately began his efforts to sell the timber on the partnership property and the Wimberly land, and that as a result of his efforts he, M. B. Wingate, procured a purchaser for the timber at the price of seventy thousand dollars." Movant insists that this instruction was error, because it submitted to the jury whether the defendant would be entitled to a decree for specific performance on the idea that the defendant had complied with a proposed "contract" claimed to have been proposed to him by the plaintiff, regardless of whether the plaintiff knew or understood, at the time he accepted the check or notes, that it was intended to be a compliance on the part of the defendant with the terms of the alleged contract. Movant insists that the alleged pro-

posal could not amount to a contract, was never accepted by the defendant, was void under the statute of frauds, and was without consideration. Each of these objections being based upon the same facts and reasoning as previously stated in the fifth and sixth grounds of the motion.

(15) The court charged the jury: "If there be a valid, that is to say, a legal consideration for the promise, it matters not from whom it is moved. The promisee, the person to whom the promise was made in the contract, may sustain his action though a stranger to the consideration. That is to say that it is not necessary that he shall pay the money, but if some other person pays the money for him or through his efforts, then he would have the right to bring his action and submit the question for the consideration of the jury." This instruction is assigned as error, because it must have impressed the jury with the idea that the court meant that if the plaintiff accepted the checks and notes, that would constitute a valid consideration to support an obligation on the part of the plaintiff to convey to the defendant plaintiff's interest in the partnership assets, whether or not the plaintiff understood and intended at the time to accept the checks and notes as purchase-money of said interest in the partnership property; movant insisting that the contract was void under the statute of frauds and unilateral, that the mere receiving of said checks and notes would not constitute such consideration, and the same could constitute a consideration upon only one theory, to wit, that the defendant offered the plaintiff said checks and notes as the purchase-price of the interest of the plaintiff in the partnership, and that plaintiff accepted the same knowing at the time that they were so tendered.

(16) The court charged the jury: "The defendant claims and contends that the purchaser so obtained by him, Blakely Hardwood Lumber Company, paid over to the plaintiff, R. L. Hall, money and notes to the amount of $70,000 for said timber, and that R. L. Hall accepted said money and notes in payment for said timber and in settlement of the purchase-price agreed upon between him and R. L. Hall for the Newell place. If these contentions are found by you to be true from the evidence in the case, under the rules of law given you in charge, then it would be your duty under your oaths to find a verdict for the defendant, M. B. Wingate." This instruction is assigned as error, because: (a) It is based upon the

assumption of the validity of the alleged contract claimed by the defendant; whereas movant insists that the alleged contract was not a contract at all, but is void under the statute of frauds and unilateral.  (b)  This instruction excluded from the consideration of the jury the issue as to whether or not the plaintiff's alleged offer was limited to the time prior to Christmas, 1922.   (c)  It excluded from the consideration of the jury the contention of the plaintiff that he was to receive all of the purchase-price brought by the Wimberly timber, no matter what it was, and was to receive individually one half of the purchase-price brought by all of the timber; and said charge is based upon the assumption that the contract as to the Wimberly timber was exactly as contended by the defendant, and not as contended by the plaintiff.  (d)  The use of the language, "it would be your duty under your oaths to find a verdict for the defendant," must have unduly impressed the jury with their obligation to find for the defendant, the court having used no such expression in its charge with reference to the contentions of the plaintiff, and having never-charged the jury that under any circumstances it would be their duty under their oaths to find a verdict for the defendant.

(17)  Because the court erred in refusing, although duly requested in writing, to charge the jury the following:  "I charge you that you should find for the plaintiff unless you find that the defendant has established to your satisfaction, by evidence so clear and convincing as to leave no reasonable doubt, the contention of the defendant to the effect that he has, under parol contract, purchased the interest of the plaintiff in the firm assets."

(18)  Because the court erred in refusing a request to charge the jury as follows:  "The plaintiff contends that in the first place he never made any offer to sell out to the defendant his interest in the assets of the firm of Hall & Wingate, except one which was conditioned on a cash payment to him of the amount which was owed him by said Hall & Wingate; and in the second place plaintiff contends that the amount owed him by the said firm of Hall & Wingate was considerably more than $47,000; and in the third place, the plaintiff further contends that his offer was limited to the time prior to Christmas of last year, and that it was not to stand open after Christmas of last year; and in the fourth place, the plaintiff contends that the defendant, after having said offer

submitted to him, did make an effort to raise the amount of money mentioned by the plaintiff to be paid in cash under said offer, and finally came to the plaintiff a few days before last Christmas, and then said to plaintiff in substance that his efforts to raise the money had failed and therefore he could not carry out the terms of said offer, and that from thenceforward no offer was outstanding; and in the fifth place, the plaintiff contends that he never accepted the cash and notes, which were received as the purchase-price of the timber on the Newell place and the Wimberly place, as any compliance with any previous offer to the defendant, but accepted one half of them simply as a member of the firm of Hall & Wingate, to be applied to the benefit of that firm, and the other one half as his individual property, as the proceeds of his timber on the Wimberly place owned by him; and in the sixth place, the plaintiff contends that the timber on the Wimberly place was sold, not for $22,500 as mentioned in said offer, but that it was sold for $35,000, and that he, plaintiff, was and is the sole owner of all the purchase-price of that part of the timber, though the plaintiff concedes that the defendant is entitled to a half interest in the other $35,000 and notes therefor which were given for the purchase-price of the timber on the Newell place."

(19)   Because the court erred in refusing a request to charge the following:   "If you should believe that the minds of the parties met in an agreement which both understood, as contended by the defendant, that is, that the defendant was to have the right to buy out the plaintiff's interest in the firm of Hall & Wingate, by paying to Hall $47,000 at any time prior to January 2, 1924, still I charge you that even such an agreement would not be binding upon the plaintiff under the law, if it were made by mere word of mouth, this for the reason that there was no consideration paid to plaintiff for making said agreement; and therefore, even if you believe that the evidence establishes beyond reasonable doubt that the plaintiff did make such a proposition to the defendant, still it would amount in law to no more than a proposal to trade on those terms; but such proposal would become a binding agreement on the part of the plaintiff if at any time prior to January 2, 1924, the defendant not only accepted the proposal, and actually complied with his part of the terms thereof, but the plaintiff at the same time accepted such compliance by the defendant as a compliance with the

terms of the original proposition; for if the plaintiff accepted anything which was not a compliance with the original proposition, or even if he accepted something which was a compliance with the original proposition, without knowing or intending that it be accepted as a compliance with the original proposition, then no binding trade would result therefrom."

(20) Because the court refused a request to charge the following: "The defendant contends in this case that the plaintiff proposed to him, defendant, that he, the plaintiff, would sell out to the defendant the plaintiff's interest in the assets of the firm of Hall & Wingate upon payment to the plaintiff of $47,000; and the defendant contends that that proposition was to remain open until the end of the partnership agreement, on January 2, 1924. The plaintiff, on the contrary, contends that the only proposition which he made to the defendant was limited to a time prior to Christmas of last year. On that subject I charge you, gentlemen, that if you believe the contention of the plaintiff to be correct, or if you believe that the defendant has failed to establish his contention in that respect, by evidence so clear and satisfactory as to leave no room for reasonable doubt, then you should find that there was no such agreement."

(21) Because the court erred in refusing a request to charge the jury the following: "Plaintiff contends that the only proposition he made to defendant was limited and conditioned on its being carried out by the defendant by Christmas of last year. I charge you that where a proposition is limited to a certain time, it must be carried out within that time, or it lapses and becomes void."

(22) Because the court further erred in refusing a request to charge the jury the following: "The defendant contends that the plaintiff authorized the defendant to sell for him, or purchase from him, the timber on the Wimberly place, for the sum of $22,500. The plaintiff denies this, but contends on the contrary that he did propose to the defendant that the defendant might sell the timber on the Wimberly place at a minimum price of $22,500, at any time before Christmas of last year, provided it was necessary to sell said Wimberly timber in order to effectuate a sale of the timber on the Newell place. On this subject I charge you, in the first place, if the plaintiff's contention is correct, and the authority to sell was limited to a time prior to Christmas of last year, then

no sale could be made under that proposition under any circum-
stances after Christmas of last year; and in the second place, even
if the plaintiff authorized the defendant to sell the timber on the
Wimberly place after Christmas of last year, at a minimum price of
$22,500, that would not mean that the defendant would be en-
titled to receive as commission all that he succeeded in selling said
Wimberly timber for, over and above $22,500, for the law is that,
where an agent is authorized to sell property at a minimum price,
that does not mean that the agent is entitled to charge as commis-
sions on the sale all that he succeeds in making the property bring,
over and above that price, unless the owner so agrees; and in the
third place, I charge you that even if the plaintiff did, by mere word
of mouth agreement, say to the defendant that he, the defendant,
could purchase from the plaintiff said Wimberly timber for $22,-
500, such agreement would be void under our law, and could be
retracted at any moment by the plaintiff, and would be the basis of
a good and binding trade on the part of the plaintiff only in case
the plaintiff actually accepted, at a later date, as a compliance
with that agreement, the sum of $22,500; in other words, no such
agreement would result if the plaintiff accepted at a later date that
amount or any other sum, if it were not accepted as a compliance
with that proposition."

(23)   "Because the verdict in said case in favor of the defend-
ant and decreeing specific performance of the alleged parol con-
tract for the sale of land, claimed by the defendant to have been
made by the plaintiff with him, was contrary to the law and the
evidence, for this specific reason, in addition to those to be urged
under the general grounds of the motion for a new trial, which
are not abandoned, to wit: for the reason that specific performance
of a voluntary agreement or a mere gratuitous promise to convey
land will not be decreed: there must have been possession of the
land given under the agreement, with a meritorious consideration,
accompanied by valuable improvements made upon the faith
thereof; and it was not claimed in this case that there was any
possession of the land given under the agreement, accompanied by
valuable improvements made on the faith of the agreement, nor is it
claimed that there was any consideration of the plaintiff's agree-
ment which could be properly claimed to be meritorious under
the law; this for the reason that whatever time and work the de-

fendant claimed to have expended in making the sale of the timber was time and work which belonged to the firm of Hall & Wingate, the undisputed evidence of the defendant himself showing that, under his contract, he was obliged to devote his entire time and attention to the business of Hall & Wingate; and therefore any contract which the defendant succeeded in making by the expenditure of said time and work belonged to the firm of Hall & Wingate, and not to the defendant; and as to the money or checks and notes said defendant claimed to have delivered to the plaintiff, that could not be a consideration which could be considered meritorious, this for the reason that the same were the proceeds of property, the title of all of which was in said plaintiff, the Wimberly place part thereof absolutely in the plaintiff and the Newell place part thereof in the plaintiff as security for the amount owed to the plaintiff by the firm of Hall & Wingate, which the evidence showed, movant contends, to be $53,762.15, and which has never been paid."

(24) "The court erred in charging the jury as follows: 'He [the plaintiff] claims and contends further that if the timber on the Wimberly place was sold for more than $22,500, then Wingate [defendant] was to participate equally in all amounts over and above $22,500.' Movant contends that said charge was error in that it misstated the contention of the plaintiff, since, as movant contends, plaintiff contended and testified in said case that if the timber on the Wimberly place was sold for more than $22,500, that then and in that event the whole of said excess over and above that amount was to belong to the plaintiff alone, and that the defendant was not to participate in said excess."

*Benton Odom* and *Pope & Bennet,* for plaintiff.

*E. E. Cox* and *Pottle & Hofmayer,* for defendant.

RUSSELL, C. J.   (After stating the foregoing facts.)

1. After a careful and painstaking review of the voluminous record in this case, there appears to be no reason why there should be a reversal of the judgment of the trial court upon any of the various rulings as to which complaint is made. The law of the case was practically settled by the ruling upon the demurrers to the answer of the defendant and the amendment thereto, in which the defendant sought by way of cross-bill to secure affirmative relief in his own behalf. The cross-bill was attacked upon the ground that the alleged contract was unilateral and without consideration, void

under the statute of frauds, and so unjust, unfair, and unconscionable that the enforcement of specific performance should be refused. We think the general demurrers were properly overruled. The agreement alleged in the defendant's cross-action was not void under the statute of frauds, because acceptance and performance of the alleged parol offer on the part of the plaintiff to the defendant was alleged, and it was further averred that the defendant had complied with the proposal of the plaintiff to the full satisfaction of the latter. *Flagg* v. *Hitchcock*, 143 *Ga.* 379 (2) (85 S. E. 125). A contract even as to the sale of an interest in real estate may consist of an offer, acceptance, and performance. Civil Code (1910), § 3223 (2). If the law properly requires specific performance of a parol contract only partially performed when it would be a fraud upon one of the performing parties not to permit him to complete it (Civil Code (1910), § 3223 (3)), much more can there be no question of the fact that where there has been either full performance of the original contract, or acceptance of a satisfactory substitute and full performance of something satisfactory to the original proposer, the contract should be required to be performed. The contract alleged was not unilateral, because, when the services which Wingate undertook to perform in selling the two bodies of timber were actually performed, the consideration proposed by Hall was supplied. Treating the agreement as if it were a mere undertaking on the part of Wingate to sell the property as a real-estate agent for Hall when he found a purchaser ready, able, and willing to purchase on the terms proposed by Hall—that is, for not less than $22,500 for each of the bodies of timber,—Wingate would have been entitled, under the agreement alleged by him, to $25,000, the difference between the price fixed by Hall and $70,000, the price actually obtained by him, or the sum of $25,000, regardless of their relation as partners, and in the absence of any other stipulation which Wingate alleged accompanied this particular feature of the parol offer, and would have been entitled to a judgment therefor, although the agreement had not been reduced to writing. *Watson* v. *Brightwell*, 60 *Ga.* 212. And so in this case the performance by Wingate of that which Hall proposed should be done supplied mutuality and consideration sufficient to vitalize the negotiations into an enforceable contract. The test of mutuality is to be applied as of the time the contract is to be enforced; and if the

promisee accomplishes the object contemplated, then the promise is rendered valid and binding. *Owenby* v. *Georgia Baptist Assembly,* 137 *Ga.* 698 (74 S. E. 56, Ann. Cas. 1913B, 238). It was not necessary that the promisee agree to do the act proposed by the promisor. It is essential that he actually perform. "Though a promise may be nudum pactum when made, because the promisee is not bound, it becomes binding when he subsequently furnishes the consideration contemplated by doing what he was expected to do." *Brown* v. *Bowman,* 119 *Ga.* 153 (46 S. E. 410). See also *Robson* v. *Weil,* 142 *Ga.* 431 (83 S. E. 207).

But it is insisted that this was a partnership, and that the agreement as to the timber on the Newell place was partnership property. As to a similar contention it has been held that a contract is not void for want of mutuality merely for the reason that the purchase-price was to be paid from the proceeds of the profits of a going business. *Zipperer* v. *Helmnly,* 148 *Ga.* 480 (97 S. E. 74); *Murphy* v. *Creamer,* 10 *Ga. App.* 593 (74 S. E. 61). The mere fact that Hall offered to sell the timber upon the two mentioned tracts of land at a price far below its value would not of itself render the contract either unreasonable or unjust or unconscionable, there being nothing to show that his offer was not made of his own volition and nothing to indicate that any advantage had been taken of him by way of concealment or misrepresentation. There is no merit in that ground of the demurrer. Occasions often arise where one who thinks he has made a bad bargain or entered into a very disagreeable connection is glad to make some financial sacrifice in order to disengage himself and put the proceeds of a poor sale to a different use. The special demurrers were likewise properly overruled. Counsel for plaintiff in error now expressly abandon their insistence upon the demurrer to paragraph 17 of the cross-bill, but insist upon the demurrer to paragraph 18. In this ground of the demurrer the plaintiff insisted that the allegation that the defendant accepted the offer made by the plaintiff was a mere conclusion of the pleader, and that it should have been alleged how, when, and where the offer was accepted. We think that the allegations of the defendant as to the time, place, and circumstances under which the alleged offer was made, which antecede the statement that the offer was accepted, conclusively raise the inference that the acceptance was at the same time and place and

under the circumstances named; and in any event the statement that one accepted a definite and described offer can not be a mere conclusion, but is rather a statement of a fact, inasmuch as such proposal must either be accepted or refused. It might be necessary, in case of a refusal, to state that there was silence and thereafter no action, from which refusal must be inferred, and a special demurrer might be used to elicit information as to the method in which the refusal was made manifest; but a statement that a proposal is accepted is not dubious or doubtful. What we have just said applies also to the statement that the defendant had consummated a sale of the timber to the Blakely Hardwood Lumber Company, to which the plaintiff demurred as being a mere conclusion of the pleader. It is probable that a special demurrer might have been so framed as to have required a statement as to when and how the trade was consummated, but this language is not demurrable upon the single ground that it is a conclusion of the pleader; for to state that "I consummated a sale" is the statement of a fact, which statement is either true or untrue, since the word sale has a well-established legal definition. Whether the labor and expense incurred by the defendant in making the sale was great or small is immaterial in view of the issue in this case, where the real issue was whether Hall made the proposal as testified to by the defendant, and whether the defendant had complied with the proposal to the satisfaction of Hall; and therefore the overruling of that portion of the demurrer, even if the plaintiff had been entitled to know the exact amount of labor and expense incurred by the defendant, was not error in a legal sense, because it can not be conceived to have been harmful to the plaintiff. The portion of the demurrer addressed to the allegation that the sale was made on terms approved by Hall and accepted by him as compliance with the offer made by him to the defendant, on the ground that it was a mere conclusion of the pleader, and on the further ground that the terms are not set out, was properly overruled, because the information thus sought was supplied in other portions of the answer. The same is true as to the complaint that the language, "likewise in accordance with the terms proposed and agreed to by said Hall when the said offer was made," is a conclusion of the pleader without any facts to sustain it. Since it is lawful for a defendant to file contradictory pleadings, the plaintiff's contention that there is an apparent con-

tradiction between a statement of the defendant that he carried out the agreement in strict accordance with the terms proposed by Hall, when in another part of the answer he relies upon the ground that Hall accepted notes instead of cash, which was really a substitution of what would be presumed to be a cash sale, was properly overruled by the court.

2. Exception is taken to the allowance of an amendment to the defendant's answer, which was offered for the purpose of obtaining the opening and conclusion, and to the court's allowing the defendant the opening and conclusion; the plaintiff contending that he was entitled to this important and valuable privilege. We find no error in the ruling of the trial judge upon this point. It is insisted that the statement of the amendment was not broad enough to constitute a full admission of liability, so as to entitle the defendant to the opening and conclusion. It must be borne in mind that the plaintiff's petition only asked for an injunction against the defendant, for the appointment of a receiver, and for a dissolution of the partnership. The defendant admitted "that unless he sustains the allegations of his answer in the nature of a cross-bill, beginning with paragraph 15 thereof and ending with the end of said original answer, that plaintiff would be entitled to an injunction against this defendant, to a dissolution of said partnership, and to a receivership for the partnership assets and the property involved in the litigation; and he therefore assumes the burden of proving the facts stated in the cross-bill of defendant, to the end that he may obtain specific performance of his contract set out in said cross-bill." We think this admission was broad enough to entitle the defendant to the opening and conclusion. But aside from the amendment, and if the amendment had never been offered, under the well-settled rule that he who carries the burden of proof is entitled to the opening and conclusion it was not error for the court to allow the defendant the opening and conclusion in this case. The affirmative relief sought by the defendant was so wholly inconsistent with the relief sought by the plaintiff, whose allegations of fact were not controverted, that a decree for the plaintiff must necessarily have followed unless the defendant by affirmative proof had established the contentions set up in his answer in the nature of a cross-bill. The relief sought by the plaintiff dealt with property alleged to be the property of the partnership. The de-

fendant averred that that property was not the property of the
partnership but was his in his own right. The defendant admitted
that, had there been a partnership, he could not have prevented
the relief sought by the plaintiff unless he established his alleged
contract by the performance of which he claimed the title to the
property in dispute had vested in himself alone. Undoubtedly,
therefore, the burden of proof fell upon him, and this burden en-
titled him to the opening and conclusion in the introduction of
evidence and the argument.

3. Upon the trial of the case there was direct conflict in the
evidence as to the terms of the proposal made by the plaintiff to the
defendant, and a verdict in favor of either of the parties would have
been authorized. For this reason the trial judge did not err in
overruling the general grounds of the motion for a new trial, unless
there were such errors in the trial as erroneously induced or con-
tributed to cause the finding actually returned by the jury; and
for this reason we shall deal with the several grounds of the amend-
ment to the motion.

4. The fourth ground of the motion for new trial excepts to
the allowance of the amendment to the defendant's answer to which
we have already referred. The plaintiff preserved exceptions pen-
dente lite to this point, or else the same could not be considered,
because the principle that rulings upon the pleadings are not sub-
ject to review in motions for new trials is hoary with age, and all
courts bow to it reverently. *Mayor &c. of Dublin* v. *Dudley*, 2 *Ga.
App.* 762 (59 S. E. 84). But this ground of the motion properly
excepts to the fact that in the trial the court allowed the defendant
to open and conclude, over plaintiff's objection; and what we have
said as to this portion of the exceptions as preserved pendente
lite applies to this portion of the ground of the motion, and need
not be repeated.

5. Exception is taken because the court allowed the witness
Wingate to testify with reference to the contents of a slip of paper
as set forth in the statement of facts, and to the admission of the
paper itself at a subsequent stage of the trial. It appears from
the record that after Wingate had testified at length as to the
agreement entered into between Mr. Hall and himself, his attention
was called to a slip of paper which he testified was given him by the
plaintiff, and upon which were the words and figures, "New 47,000,

Wimb 22,500, $69,500," and he was asked "what Mr. Hall said those figures were intended to represent;" and that the court allowed him to answer the question and testify that both the plaintiff and himself understood the word "New" to refer to the Newell place and the word "Wimb" to the Wimberly timber, and that the total figures on the slip of paper represented the full amount of the timber on the Wimberly place and the purchase-price of the Newell plantation. It was stated by counsel for defendant that the paper was not offered as evidence of a contract, but introduced merely as a circumstance corroborating the parol testimony of the witness as to the parol agreement upon which the defendant relied. The plaintiff insisted that the testimony was inadmissible, because it was an effort to vary by parol a written contract, and because if it was considered as a contract it was void under the statute of frauds. A review of the record shows that the court did not err in permitting the witness to answer the question over the specific objection urged, because it is plain that the defendant was not relying upon any contract reduced to writing. The fact, if it was true, that the plaintiff had given this memorandum (to which he had signed his name) to the defendant, and in which the amounts corresponded with those testified to by the defendant, could be used by the jury as corroboration of the testimony of the defendant in regard to the alleged parol contract.

6. In the sixth ground of the motion for a new trial the correctness of the charge as set forth in the statement of facts is challenged. It is argued that the judge should not have used the word "contract," because there was no evidence to support the use of that word, because there was no evidence that the offer of the plaintiff was ever legally accepted by the defendant, because the alleged contract was void under the statute of frauds, because there was no consideration for the contract, because the contract was not performed, because the $69,500 was not paid in cash, and because the alleged agreement was void for want of mutuality. The movant contends that the giving of the charge, which really only submitted the contentions of the defendant, was error, because all questions as to the making of the alleged contract claimed by the defendant should have been eliminated from the case. What has been said in the ruling upon the demurrers applies to the exception to the instruction upon the ground that the alleged ·contract was void

under the statute of frauds, and void for want of mutuality, and void for lack of consideration; and as the defendant proved his case as laid, the charge of the court was not erroneous for any of the reasons just mentioned. Was the instruction erroneous because the alleged contract was not sufficiently certain and definite? Our law provides that specific performance will not be decreed except of a contract certain and definite in all of its terms. But we do not think that the exception of the plaintiff is well taken, because the contract testified to by the defendant in error was both certain and definite in its terms,—that the plaintiff would accept $47,000 for all of his interest in the Newell plantation and for the indebtedness due by the partnership of Hall and Wingate, and $22,500 for his timber on the Wimberly place, at any time before January 2, 1924. We think the court was authorized to give the instruction despite the complaint as to its correctness. As we have already ruled, a contract may be legally accepted by actual performance on the part of the promisee; and so the charge was not unauthorized on the ground that the defendant never legally accepted the contract. Another point raised in this ground of the motion was that the charge was unauthorized, because the payment of $69,500 should have been in cash, whereas $56,000 of the purchase-price, as shown by the evidence, was paid in notes. We do not think that the charge was objectionable on the grounds stated, merely because the testimony showed that Mr. Hall accepted notes for a portion of the purchase-price in lieu of cash, since there was no evidence that Mr. Hall made any point as to this, but willingly took the notes at a time when he could have declined to accept anything but cash. His acceptance of the notes was a waiver of his right to have cash. It appears to have been a voluntary acceptance of notes (no doubt bearing interest) which were given by a maker so satisfactory as to provide a safe interest-bearing investment until they were paid. What has been said as to the sixth ground of the amended motion applies also to the seventh ground, and our ruling upon both grounds is embodied in the sixth headnote.

7. In the ninth ground of the motion for a new trial the plaintiff complains that in a case of specific performance the court should not have given the instruction which is usual in criminal cases with reference to reasonable doubt, to wit, that the jury should not create in their minds a vague or fanciful doubt as to the contentions

of the defendant, but the doubt must be one reasonably entertained by the jury, one that arises from the evidence or lack of evidence, and leaves the mind wavering, not satisfied as to the defendant's contention. The plaintiff contends that the burden was upon the defendant to establish the alleged parol contract by evidence so clear and convincing as to leave no reasonable doubt as to its existence; that the instruction is not a correct statement of the law as applicable to a civil case; and that the instruction must have unduly given the jury an impression favorable to the defendant as to the amount of proof he would have to submit to them in order to prevail. The court had already instructed the jury in a preceding portion of his charge that the defendant "undertakes to establish to your satisfaction beyond a reasonable doubt that a certain definite contract was made by Mr. Hall with him, and that all of the terms of said contract were carried out and performed by him, and that by reason of that condition he is entitled to have the title to that land decreed to be in him." The judge had also instructed the jury, immediately preceding the instruction complained of, "that under our law such a parol contract as to the sale of lands can not be considered as established in a court, unless made out so clearly, strongly, and satisfactorily as to leave no reasonable doubt as to the agreement." In connection therewith, and immediately following the statement that the evidence must so clearly, strongly, and satisfactorily establish a parol contract as to the sale of land as to leave no reasonable doubt as to the agreement, the court proceeded to define what is meant by the term "reasonable doubt," saying: "I charge you that a reasonable doubt is a doubt for which you can give a reason. You would have no right to create in your minds a vague or fanciful doubt as to the contentions of the defendant, but the doubt must be one reasonably entertained by you, one that arises from the evidence or lack of evidence, and leaves your mind wavering, not satisfied as to his contentions." The court did not err in giving the instruction. There can be no impropriety, in any case where the burden of proving a fact by clear, strong, and satisfactory evidence and beyond a reasonable doubt is imposed, in properly explaining and defining the term "a reasonable doubt;" and though the principle that in case of specific performance the petitioner must establish his contentions beyond a reasonable doubt is well established and has been upheld

by this court since the case. of *Printup* v. *Mitchell,* 17 *Ga.* 558, 567 (63 Am. D. 258), this fact furnishes no reason against but rather a reason why the judge should explain to the jury, if he thinks proper, the meaning of the term "a reasonable doubt" as well in a civil as in a criminal case.

8. The tenth ground of the motion for a new trial is not well taken. The court charged that the defendant contends that sometime last fall he and the plaintiff had some differences in regard to their partnership business, and that eventually the plaintiff offered to take the amount owing to him by the partnership in settlement for his, the plaintiff's, interest in the partnership property, and that this much of the contention of the defendant was not disputed by the plaintiff. It is insisted that this instruction was error, because the court omitted to state that the offer was limited to Christmas of the year 1922, as contended by the plaintiff, and because the court said nothing in the instruction to tell the jury that the defendant admitted that nothing was said as to whether the payment was to be in cash or on credit on some later date. This exception is without merit, because the record shows that the court did not state anything that was not undisputed; and it is well settled that a charge which is correct gives no ground for exception because something else which might also be correct is omitted. Aside from this rule, however, the court, in stating facts about which there is no dispute, is not authorized to enter into a detailed statement of facts in behalf of either of the parties as to which they differ. If the court had stated, as it is insisted by the plaintiff that he should have done, "that whatever offer he made was limited to Christmas of 1922," he would have been obliged also to have stated that the defendant contended that he had until January 2, 1924, or until April 3, 1924, to comply with his agreement; and the same thing would be true as to the complaint as to the omission to mention that the plaintiff claimed that the payment was to be in cash, and that the defendant was to assume and pay the amount of the indebtedness to the John Hancock Insurance Co. It is clear that the charge complained of did not necessarily impress the jury with the idea that the court was favorable to the contentions of the defendant, because nothing was stated except what the record shows to be facts upon which the parties in their contentions and testimony agree.

9. The court did not err in charging the jury that as a matter of law payment, unless stipulated definitely by the parties, must be in cash or its equivalent. This instruction, if harmful to either party, had a prejudicial tendency as against the defendant, because the defendant did not contend that the payment was made in money, and the jury might have understood from the use of the word "equivalent" that the court meant a check or draft, or money transferred by telegraph, or any paper which may be transferred for money; and the defendant's contention is that the requirement that the payment should be made in cash was waived by the acceptance of notes. Instead of a contention that he actually complied with a requirement that the payment should be in cash, he contended and introduced evidence to support the contention that the plaintiff wanted to accept and did accept promissory notes, payment of some of which was long deferred. But the instruction complained of could in no event have been harmful, in view of the fact that the court immediately followed the instruction here complained of by instructing the jury: "However, a party to a contract might, by the acceptance of money, notes, or any other thing of value, waive the requirement that the payment should be made in money," which so limited the meaning of the word "equivalent" as to render the instruction as a whole an exact and correct statement of the law upon the subject. For this reason the assignment of error contained in the twelfth ground of the motion can not be sustained.

10. The assignment of error contained in the thirteenth ground of the motion for a new trial is without merit, for the reasons stated in dealing with the first ground of the amended motion. The alleged contract was not void under the statute of frauds, or for any of the other reasons alleged; and even if the plaintiff's proposal be construed as a continuing parol offer to contract, performance by the defendant accepted by the plaintiff by receiving the check and notes for $70,000 as the purchase-price of the two tracts of timber created a complete contract. It is insisted in this ground of the motion that there was no evidence that the plaintiff gave the defendant until the expiration of the partnership on January 2, 1924, to comply with the agreement, and that for that reason the instruction was erroneous. While it is true that the plaintiff swore that his offer was limited to Christmas of the year

1922, the defendant swore equally positively that the option extended until January 2, 1924; and both sides of the proposal were fairly presented to the jury.

11. In the fourteenth ground of the motion the plaintiff presents the contention that it was error to give the instruction of which complaint is made, because it submitted to the jury whether the defendant would be entitled to a decree for specific performance on the idea that the defendant had complied with the proposed contract, regardless of whether the plaintiff knew or understood at the time he accepted the check and notes that it was intended to be a compliance on the part of the defendant with the terms of the alleged contract. The plaintiff insists that the alleged proposal could not amount to a contract, was never accepted by the defendant, was void under the statute of frauds, and was without consideration. For the reasons hereinbefore stated we can not sustain the contentions last mentioned. While the evidence as to whether Hall knew, at the time he accepted the check and notes, that Wingate intended and understood that the check and notes were being accepted by Hall as a compliance with his original proposal is conflicting, there are sufficient circumstances in the record to authorize the instruction given by the court upon this point, and to warrant the jury in finding that there was no reason why Hall should have forgotten the terms of the proposal to Wingate (if it be true that he made the proposal testified to by Wingate), and sufficient evidence to warrant the jury to find that Hall accepted the check and notes with the knowledge that Wingate at least understood that they were being delivered to him in accordance with and in compliance with the proposal of December 14, 1922, as testified to by Wingate. Civil Code (1910), § 4267.

12. The charge of which complaint is made in the fifteenth ground of the motion was not erroneous for any reason assigned. The court charged the jury, in effect, that if there was a valid legal consideration for the promise of Hall to Wingate, the latter as promisee might sustain his action, even though he did not pay the consideration himself, and even if the payment was made by another for him or induced to do so by his efforts. We think this a correct statement of the law. Civil Code (1910), § 4249. *Owenby* v. *Georgia Baptist Assembly,* supra.

13, 14. In view of what we have just said, it was not error

to give the instruction of which complaint is made in the sixteenth ground of the motion, because the instruction is based upon the assumption of the validity of the contract claimed by the defendant, or because the instruction excluded from the consideration of the jury the contention of the plaintiff that the alleged offer was limited to Christmas, 1922, or because it excluded the plaintiff's contention that he was to receive all of the purchase-price brought by the Wimberly timber and one half of the purchase-price brought by the Newell timber. Nor did this instruction assume that the contract as to the Wimberly timber was as contended by the defendant rather than as contended by the plaintiff, since in another portion of the charge the contention of the plaintiff was fairly and adequately presented. Exception is also taken in this ground to the use of the language, "it would be your duty under your oaths to find a verdict for the defendant," upon the ground that this language must have unduly impressed the jury with their obligation to find for the defendant, because the court did not use any such expression in his charge with reference to the plaintiff. We do not think that the addition of the words "under your oaths" was so prejudicial to the plaintiff as to warrant the grant of a new trial, in view of certain presumptions as to jury trials which must be indulged and recognized. (1) Every jury must be presumed to comprise twelve citizens of at least ordinary intelligence, fairness, and firmness in their own opinion. (2) In every charge by the court there is a possibility of lapsi linguæ. (3) Every juror must be supposed to know that he is bound under his oath to render a true verdict according to the evidence, and that his oath applies no less to evidence in behalf of one party than the other. A trial judge is bound studiously to avoid all language or any conduct which will lead the jury to suspect that he is favorable to one party to the cause rather than to the other; but if the presumption with reference to the quality of the jury can be relied upon, we do not see, considering the entire charge as it appears in this record, how the most critical juror could have drawn an inference, from the fact that the judge did not insert into his instruction as to the plaintiff's contentions the words "under your oaths," that for that reason the judge was favorable to the contentions of the defendant.

15. We find no error in the refusal of the court to give the requested instructions embodied in the eighteenth, nineteenth, twen-

tieth, twenty-first, and twenty-second grounds of the motion for a new trial. The principles of law suggested by these requests, in so far as the same were correct and pertinent, were covered in the general charge. The proposed instruction set forth in the eighteenth ground was clearly objectionable, and was properly refused as argumentative. The one set forth in the nineteenth ground, in so far as it asks that the jury be instructed that as a matter of law the agreement alleged by the defendant, and upon which his cross-action was based, would not be binding upon the plaintiff, "if it were made by mere word of mouth; this for the reason that there was no consideration paid to plaintiff for making said agreement," without more, was not a correct statement of law upon this point; and even though the remainder of the request may embody correct principles of law, it was not error to refuse the request as a whole. The request as set forth in the twentieth ground merely sets forth a statement of conflicting contentions of the plaintiff and the defendant, as to the time within which the defendant should perform his undertaking to sell the timber and pay his debt to the plaintiff for the land and the store indebtedness of Hall & Wingate. The court in the general charge called the attention of the jury in his own way to this precise contention. The request contained in the twenty-first ground asked that the jury be instructed that where a proposition is limited to a certain time it must be carried out within that time, or it lapses and becomes void. We think the court properly refused this request, because the instruction was not broad enough to cover the facts of the case on trial, and was therefore not adjusted to the evidence. There are cases where it would not be error to give such instruction; but the requirement that the contract be complied with within a limited time, like any other stipulation, may be waived, and it is not true that all propositions which are limited to a certain time lapse and become void unless they are actually performed or are carried out within the specified time. For the same reason the request embodied in the twenty-second ground of the motion could not properly have been given to the jury. The court was asked to charge "that if the plaintiff's contention is correct, and the authority to sell was limited to a time prior to Christmas of last year, then no sale could be made under that proposition under any circumstances after Christmas of last year." Further in the request the court was asked to

charge the jury that "the law is that where an agent is authorized to sell property at a minimum price, that does not mean that the agent is entitled to charge as commissions all that he succeeds in making the property bring over and above that price, unless the owner so agrees." The request also embodied an instruction "that even if the plaintiff did, by mere word of mouth agreement, say to the defendant that he, the defendant, could purchase from the plaintiff said Wimberly timber for $22,500, such agreement would be void under our law." The principles embodied in this ground of the motion were more correctly stated by the trial judge; and it follows that there was no error to refuse to present them in the form requested.

16. In the twenty-third ground it is alleged that the verdict is contrary to law, for the reason that specific performance of a voluntary agreement or mere gratuitous promise to convey land will not be decreed; and that it was not claimed in this case that any possession of the land was given under the agreement accompanied by valuable improvements made on the faith of the agreement, nor was it claimed that there was any consideration for the plaintiff's agreement which could be properly claimed to be meritorious under the law, because whatever time and work the defendant claimed to have expended in making the sale of the timber was time and work which belonged to the firm of Hall & Wingate and not to the defendant himself. The determination of whether the verdict is contrary to law upon this point must depend upon the construction placed upon the evidence by the jury. We do not think that for any reason assigned in this ground the verdict was contrary to law by reason of the fact that the defendant failed to prove a meritorious consideration moving to the plaintiff. In the first place, the movant is in error in alleging that the evidence showed that the time of the defendant under the contract belonged entirely to Hall & Wingate, and that therefore it should not be taken into account as supplying consideration. There is no phrase in the contract binding Wingate to give his entire time and attention to the business of Hall & Wingate. The evidence is to the effect that Wingate was to conduct the farming operations, but no specific amount of time is indicated or required to be devoted to this duty. Presumably he should be required to give the same attention to the partnership plantation as he would if it were his individual prop-

erty; but there is nothing to indicate that, even measuring up to this standard of good faith, there would not be considerable time when it would not be necessary for him to actually participate in the labor of the farm. There is nothing to indicate that he would not have enough time in which to make a trade for this timber, as a farmer ordinarily has to make such trades during the year as he desires. The fact that the check and notes delivered to Hall arose from the proceeds of the sale of his own property, or of property in which he owned a half interest, is of no consequence if he used the services of Wingate to obtain a price for the timber fixed by himself upon employment of Wingate as an agent, or if he agreed to sell him the property at a fixed price and Wingate thereafter resold the property at a profit:

It is insisted that the verdict is wrong, because the alleged contract is unreasonable, unjust, and unconscionable; that it virtually takes from the plaintiff his own property, and imposes upon him a loss which is so outrageous as to shock the moral sense. If this complaint is well founded, the verdict should have been set aside; for while juries are the judges of the testimony and the credibility of the witnesses, they can not render a verdict contrary to law in that the conclusion reached by them is abhorrent to the intrinsic principles of justice and fair play. The plaintiff had invested $4287.50 paid to the owner of the Newell place, and had assumed an obligation of $15,000 loaned by the John Hancock Life Insurance Company. This was the sum total of his original investment. During nearly six years which had elapsed before his proposal to the defendant, he had had the latter's services at a rate of less than $2 per day, and the latter had cleared 1000 acres of land and had erected 30 tenant-houses on the place, besides other improvements. In making these improvements and in other expenditures incidental to their farming operations the firm of Hall & Wingate had incurred an indebtedness to the plaintiff of many thousand dollars, according to the plaintiff about $53,000, and according to the defendant about $46,000. As a member of the firm of Hall & Wingate the plaintiff was as much liable for the large indebtedness as was the defendant, but as the seller of the supplies there was included in the indebtedness the usual mercantile profits in which the defendant did not share. In other words, naturally the original cost of the goods to the plaintiff was a sum perhaps

considerably less than the amount charged to Hall & Wingate, and according to the evidence Wingate was wholly unable to meet his liability upon this account. The offer which the defendant says the plaintiff made him,—to take $69,500 for the timber of the plaintiff on the Wimberly place and $47,000 for all of his interest in connection with the Newell plantation, including the original purchase-price which the defendant owed him for supplies, was not, as we consider, an unusual or an unreasonable contract in the condition of affairs then existing. At the worst, in receiving the $47,000 the plaintiff would regain the $4287.50 which he had expended in the purchase of the place, and would receive over $40,000 upon the account for supplies, which, while not payment in full, would probably cover the actual cost of the articles supplied. It was simply a question of a settlement to produce cash if the defendant, in selling the two pieces of timber, could get together $69,-500. Such transactions are not at all unusual or infrequent; and to brand this as an unconscionable contract would in our opinion distort the meaning of that term. An unconscionable contract is one abhorrent to good morals and conscience. It is one where one of the parties takes a fraudulent advantage of another. "An unconscionable contract is one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other." 4 Words and Phrases (2d series), 1047. "Equity will not enforce an unconscionable contract; but the fact that . . the entire contract is more favorable to one party than to the other does not ordinarily render it 'unconscionable.'" Chanute Brick &c. Co. v. Gas Co., 82 Kansas, 752 (109 Pac. 398). Furthermore, the contract being in parol and depending upon performance to make it perfect and complete, it seems that the plaintiff would have declined, on April 3, 1923, to have accepted anything but cash, thus waiving exact compliance with the terms of payment.

17, 18. The rulings contained in headnotes 17 and 18 require no elaboration.

19. We find no substantial ground for complaint in the exception to that portion of the decree wherein the defendant was required to pay to the plaintiff within 30 days the sum of $2572.63. The plaintiff claimed that the defendant owed him $3042.63 for supplies furnished subsequently to December 14, 1922. $3042.63

was the plaintiff's own statement of the account. He claimed no more, and the defendant admitted the amount. The jury set up and established the contract whereby the defendant was entitled to a deed to the Newell plantation and an acquittance from all debts of the partnership of Hall & Wingate prior to December 14, 1922, in consideration of $69,500. The plaintiff received in money and notes from the Blakely Hardwood Lumber Company, which were accepted by him, $70,000, leaving a difference of $500 for which the defendant, under the contract as established by the jury, was liable; and it will be readily seen that, deducting this amount from the entire debt claimed by the plaintiff, there remained exactly the sum which the court decreed should be paid by the defendant. *Judgment affirmed. All the Justices concur.*